UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATRINA LEWIS,

Plaintiff,

Case No. 24-cv-13285

v

Hon. Brandy R. McMillion

MAGNA SEATING OF AMERICA INC., d/b/a MAGNA POWERTRAIN,

Defendant.

_______________________________________________/

CARLA D. AIKENS, P.L.C.
Carla D. Aikens (P69530)
Attorneys for Plaintiff
615 Griswold, Suite 709
Detroit, Michigan 48226
844-835-2993
carla@aikenslawfirm.com

KIENBAUM HARDY VIVIANO PELTON & FORREST, P.L.C.
William B. Forrest III (P60311)
Sean T.H. Dutton (P77515)
Attorneys for Defendant
280 N. Old Woodward Ave. Suite 400
Birmingham, Michigan 48009
(248) 645-0000
wforrest@khvpf.com
sdutton@khvpf.com

_______________________________________________/

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant Magna Seating of America, Inc., d/b/a Magna Powertrain ("Defendant" or "Magna"), by its undersigned counsel, requests that the Court enter summary judgment in its favor, pursuant to Federal Rule of Civil Procedure 56, and dismiss Plaintiff's Complaint in its entirety with prejudice.

1. Defendant's motion for summary judgment seeks the dismissal of all claims against Defendant.[1] Defendant relies upon the accompanying brief and exhibits in support of its motion.

2. Defendant's counsel sought concurrence from Plaintiff's counsel in the relief requested in this motion on November 14, 2025, and concurrence was not obtained.

Respectfully submitted,

KIENBAUM HARDY
VIVIANO PELTON FORREST, P.L.C.

By: */s/ Willam B. Forrest III*
William B. Forrest III (P60311)
Sean T.H. Dutton (P77515)
Attorneys for Defendant
280 N. Old Woodward Ave., Suite 400
Birmingham, MI 48009
(248) 645-0000
wforrest@khvpf.com
sdutton@khvpf.com

Dated: November 14, 2025

[1] Plaintiff was employed by MPT-Sterling Heights, a division of Magna Powertrain of America, Inc., and was never employed by Magna Seating of America, Inc. Magna notified Plaintiff in its Answer that she had named the wrong party in this lawsuit. To date, Plaintiff has failed to amend her Complaint to name the correct Defendant.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATRINA LEWIS,

Plaintiff,

Case No. 24-cv-13285

v

Hon. Brandy R. McMillion

MAGNA SEATING OF AMERICA INC., d/b/a MAGNA POWERTRAIN,

Defendant.

_______________________________________________/

CARLA D. AIKENS, P.L.C.
Carla D. Aikens (P69530)
Attorneys for Plaintiff
615 Griswold, Suite 709
Detroit, Michigan 48226
844-835-2993
carla@aikenslawfirm.com

KIENBAUM HARDY
VIVIANO PELTON & FORREST, P.L.C.
William B. Forrest III (P60311)
Sean T.H. Dutton (P77515)
Attorneys for Defendant
280 N. Old Woodward Ave. Suite 400
Birmingham, Michigan 48009
(248) 645-0000
wforrest@khvpf.com
sdutton@khvpf.com

_______________________________________________/

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS


TABLE OF CONTENTS ........ ii

ISSUES PRESENTED ........ iii

CONTROLLING AUTHORITIES ........ iv

INTRODUCTION ........ 1

STATEMENT OF MATERIAL FACTS ........ 3

A. Lewis' Short Stint of Employment at Magna. ........ 3

B. The December 6 Warning and Lewis' Unprofessional Responses. ........ 4

C. Magna Terminates Lewis' Employment. ........ 5

D. Lewis Testifies That She Never Complained of Discrimination or Harassment of Any Kind During Her Magna Employment. ........ 6

E. Lewis Fails To Disclose Her Employment Claims Against Magna To The Bankruptcy Court. ........ 8

ARGUMENT ........ 11

A. There is No Direct Evidence of Race Discrimination. ........ 11

B. There Is No Circumstantial Evidence of Race Discrimination. ........ 13

C. Lewis Cannot Meet Her Pretext Burden. ........ 14

D. Lewis' Retaliation Claim Fails Because She Admits That She Did Not Engage In Protected Activity. ........ 17

E. Lewis' Michigan Public-Policy Wrongful-Discharge Claim Fails As A Matter of Law Because § 1981 and Elliott-Larsen Provide Her An Exclusive And Adequate Remedy. ........ 19

F. Lewis' Claims Against Magna Are Barred By Judicial Estoppel Because She Failed To Disclose Them To The Bankruptcy Court. ........ 20

CONCLUSION ........ 23

## ISSUES PRESENTED

1. Do Plaintiff Katrina Lewis' race discrimination claims under 42 U.S.C. § 1981 and the Elliott–Larsen Civil Rights Act fail where the record evidence confirms: (a) no direct evidence of discrimination; (b) no comparator who engaged in similar conduct as Lewis without being terminated; and (c) that Lewis was not replaced after her termination?

   Magna's Answer**:** **Yes.**

2. Do Lewis' retaliation claims under § 1981 and Elliott-Larsen fail where she admits she never complained to Magna of discrimination or harassment of any kind, and thus engaged in no protected activity?

   Magna's Answer: **Yes.**

3. Is Lewis' Michigan public-policy wrongful-discharge claim barred because § 1981 and Elliott-Larsen provide adequate, exclusive statutory remedies addressing the same alleged conduct?

   Magna's Answer: **Yes.**

4. Are Lewis' claims barred by judicial estoppel where she, while seeking a Chapter 13 plan modification to lower her monthly payments to creditors, failed to disclose her employment claims against Magna to the Bankruptcy Court?

   Magna's Answer: **Yes.**

## CONTROLLING AUTHORITIES

### Cases

*Allen v. Highlands Hosp. Corp.*,
545 F.3d 387 (6th Cir. 2008) ........................................................................13

*Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*,
323 F.3d 386 (6th Cir. 2003) ........................................................................11

*Anderson v. Liberty Lobby. Inc.*,
477 U.S. 242 (1986) ......................................................................................11

*Barnes v. GenCorp, Inc.,*
896 F.2d 1457 (6th Cir 1990) ........................................................................14

*Clayton v. Meijer, Inc.*,
281 F.3d 605 (6th Cir. 2002) ........................................................................16

*Ercegovich v. Goodyear Tire & Rubber Co.,*
154 F.3d 344 (6th Cir. 1998) ........................................................................16

*Geiger v. Tower Auto.*,
579 F.3d 614 (6th Cir. 2009) ........................................................................12

*Herrera v. Churchill McGee, LLC*,
545 F. App'x 499 (6th Cir. 2013)..................................................................18

*Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.*,
176 F.3d 921 (6th Cir.1999) ..........................................................................11

*Kamal v. Ford Motor Co.,*
No. 24-12073, 2025 WL 1691193, at 3 (E.D. Mich. June 16, 2025)...................20

*Landin v. Healthsource Saginaw, Inc.*,
305 Mich. App. 519 (Mich. 2014)..................................................................20

*Lee v. Dana Inc.*,
No. 20-11282, 2024 U.S. Dist. LEXIS 178926, at 30–31 (E.D. Mich. Sept. 30, 2024) ..........20

*Minadeo v. ICI Paints*,
398 F.3d 751 (6th Cir. 2005) ..........13

*Nieves v. Kiekert AG*,
No. 20-11467, 2021 WL 2936647, at *3 (E.D. Mich. July 13, 2021) ..........23

*Patel v. Trinity Health Corp.*,
No. 20-10517, 2021 WL 4894637, at *14 (E.D. Mich. Oct. 20, 2021) ..........18

*Rogers v. Henry Ford Health Sys*.,
897 F.3d 763 (6th Cir. 2018) ..........17

*Rowan v. Lockheed Martin Energy Sys., Inc*.,
360 F.3d 544 (6th Cir. 2004) ..........13

*Seeger v. Cincinnati Bell Tel. Co*.,
681 F.3d 274 (6th Cir. 2012) ..........17

*Smith v. Chrysler Corp*.,
155 F.3d 799 (6th Cir. 1998) ..........17

*Sniecinski v. Blue Cross & Blue Shield of Mich*.,
469 Mich. 124 (2003) ..........11

*Stanley v. FCA US, LLC*,
51 F.4th 215 (6th Cir. 2022) .......... 22, 23

*Stegall v. Res. Tech. Corp.*,
514 Mich. 327 (2024) .......... 19, 20

*Suchodolski* v. *Michigan Consol. Gas Co*.,
412 Mich. 692 (1982) ..........19

*Washington v. Sodecia Auto.*,
2025 WL 2965835, at *3 (6th Cir. Oct. 21, 2025) ..........18

*Wexler v. White's Fine Furniture, Inc.*,
317 F.3d 564 (6th Cir.2003) ....................................................................15

*White v. Wyndham Vacation Ownership, Inc.*,
617 F.3d 472 (6th Cir. 2010) ............................................................... 22, 23

*Williams v. Tyco Elec. Corp.*,
161 Fed. Appx. 526 (6th Cir. 2006) .......................................................14

**Statutes**

42 U.S.C. § 1981 ................................................................................ 1, 2, 19

**Rules**

Fed.R.Civ.P 56(a)...................................................................................11

# INTRODUCTION

Plaintiff Katrina Lewis worked as a Maintenance & Facilities Coordinator for Magna for six months in 2023. During her new hire orientation, Magna explained to Lewis its policy prohibiting personal cell phone use during work time. Lewis admits that, contrary to this policy, she made personal calls 2-3 times per day, five days a week, at Magna during work time (in addition to personal texting) on her cell phone.

On December 6, 2023, Lewis' supervisor notified her in writing that she needed to stop spending so much time on her personal cell phone during working hours. Rather than heed this warning, Lewis blamed her coworker Madelyn Borchardt, whom Lewis believed had reported her for being on her cell phone. Lewis admits that she called Borchardt a "stupid bitch" in the workplace. On December 14, 2023, Magna terminated Lewis' employment for two legitimate and compelling reasons: (1) the time spent on her personal cell phone and not working; and (2) her unprofessional conduct in the workplace toward others.

In this lawsuit, Lewis first claims that she was terminated because of her race in violation of 42 U.S.C. § 1981 and Michigan's Elliott-Larsen Civil Rights Act. Her race discrimination claim fails for two key reasons. First, there is no direct evidence of race discrimination. Lewis points only to stray comments by her coworkers about food and clothing that are wholly unrelated to the termination

decision. Indeed, Lewis does not claim that a decisionmaker in her termination made a race-related comment of any kind, let alone a race-related comment about her termination. Second, she lacks circumstantial proof: no similarly-situated white employee engaged in both the policy-violating personal phone use and the admitted "stupid bitch" outburst without being terminated, and Magna did not replace Lewis after her termination.

Lewis' retaliation claims under § 1981 and Elliott-Larsen likewise fail because she admitted at deposition that she never reported to Magna any alleged discrimination or harassment of any kind. She thus did not engage in protected activity and could not have been fired for doing so.

Lewis' final claim under Michigan's public policy exception to at-will employment fails because that public policy theory is precluded where statutes (here, § 1981 and Elliott-Larsen) contain anti-retaliation provisions and supply the plaintiff with an adequate and complete remedy.

In addition, Lewis' claims are barred by the doctrine of judicial estoppel because she failed to disclose her discrimination and other employment claims against Magna to the Bankruptcy Court when seeking to lower her monthly payments to creditors under her Chapter 13 Bankruptcy Plan.

For these reasons, this Court should grant Magna's motion for summary judgment and dismiss Lewis' claims in their entirety.

## STATEMENT OF MATERIAL FACTS

**A. Lewis' Short Stint of Employment at Magna.**

1. On June 13, 2023, Magna hired Lewis as a Maintenance & Facilities Coordinator at its Sterling Heights, Michigan facility. (Ex. A, Plaintiff's Dep., pp. 40-41; Pl. Dep. Ex. 2, 6/13/23 Job Offer) In that job, Lewis planned and coordinated maintenance activities at the Sterling Heights plant. (*Id*., pp. 42-43; Pl. Dep. Ex. 3, Job Description)

2. During her new hire orientation, Magna explained its Cell Phone Policy to Lewis. (*Id*., p. 49; Pl. Dep Ex. 10, New Hire Orientation Presentation) The presentation made to Lewis during orientation clearly stated that personal cell phone use was not permitted during work time:

> Per company policy you are not permitted to use your cell phone or other electronic devices such as MP3 players (i.e., iPods) or Smart Watches with or without earbuds, etc. during work time.
>
> Cell phones are not to be used during work time for any reason including texting or taking pictures/videos or recording conversations.

(Pl. Dep. Ex. 10, Presentation, p. 2)

3. At deposition, Lewis admitted that Magna explained this Cell Phone Policy to her during new hire orientation:

> Q. Okay. This Cell Phone Policy was explained to you during the new hire orientation; correct?
>
> A. Yes.

(Pl. Dep., p. 49)

4. Lewis testified at deposition that, contrary to the Cell Phone Policy, she made between 2-3 personal calls on her cell phone every day at work. (Pl. Dep., pp. 52-53) She further testified that she sent and received personal text messages on her cell phone while at work, but she could not recall how many. (*Id.*, p. 53)

5. Lewis admitted that she made these personal phone calls and text messages during her work time, five days a week:

Q. Did you ever use your personal cell phone for personal calls or text messages while during work time when it wasn't a lunch break?

A. Yes.

Q. And those are the times you described to me already?

A. Yes.

Q. And when you said you made two or three personal phone calls a day on your phone, was that every day during the week, five days a week?

A. Probably.

(*Id.*, pp. 54-55)

**B. The December 6 Warning and Lewis' Unprofessional Responses.**

6. On December 6, 2023, Lewis' supervisor Alex Shepherd sent her a text message on her Magna-issued business phone stating that she needed to be

more careful about being on her personal cell phone at work. (Pl. Dep., pp. 61-63) Lewis responded in a text message to Shepherd: "Okay." (*Id*., p. 62-63)

7. Lewis testified that the same day as her text exchange with Shepherd, Lewis stated to her coworker Nicole Austin: "Stupid bitch told on me." (*Id*., p. 70) Lewis was referring to another coworker, Madelyn Borchardt, as the "stupid bitch." (*Id*.) Lewis believed that Borchardt told on Lewis for using her personal cell phone because the two of them worked in the same cubicle area. (*Id*., p. 63) Austin responded to Lewis that she didn't think Lewis' statement about Borchardt was fair. (*Id*., p. 70)

8. After Shepherd's December 6 warning to Lewis, Magna received written statements about Lewis' conduct from her coworkers Borchardt, Austin, and Dyste Juncevic. (Ex. B, Lumsden Declaration, ¶ 7 and Decl. Ex. 1, Coworker Statements) Those statements confirmed (among other things) that Lewis had stated on multiple occasions after the December 6 warning that Borchardt could not be trusted, called her a bitch, and said "what the fuck are you staring at" as she walked by Austin and Borchardt. (*Id*.)

**C. Magna Terminates Lewis' Employment.**

9. Denise Lumsden worked as the Human Resources Manager at the Sterling Heights facility in 2023. (Ex. B, Lumsden Declaration, ¶ 3) She recommended to Hector Castro-Gonzales (then the Director of Operations at MPT-

Sterling Heights) that Magna should terminate Lewis' employment for two reasons: (1) the time Lewis spent on her personal cell phone and not working; and (2) Lewis' unprofessional conduct in the workplace. (*Id.*, ¶ 11)

10. Castro-Gonzales approved the termination. (*Id.*, ¶ 12) In addition, Maintenance and Facilities Manager Aaron Harvat, and Operations Manager Floyd Grayewski, were aligned with the recommendation to terminate Lewis' employment. (*Id.*) Magna thus terminated Lewis' employment on December 14, 2023. (*Id.* ¶ 13)

### D. Lewis Testifies That She Never Complained of Discrimination or Harassment of Any Kind During Her Magna Employment.

11. Lewis admitted at her deposition that she never complained of discrimination or harassment of any kind during her employment at Magna:

> Q. Okay. Okay. You, in fact, never complained of discrimination or harassment of any kind during your employment at Magna; correct?
>
> A. No.
>
> Q. Is that true?
>
> A. That's true.

(Pl. Dep., p. 112)

12. When asked about the evidence supporting her race discrimination claim at deposition, Lewis testified to three specific incidents:

1. Jennifer Borchardt (Madelyn's mother who also worked at the Sterling Heights plant) stated "this is not a fashion show" and "we are supposed to be business casual" to a group of five or six salaried employees during a meeting. (Pl. Dep. pp. 104-105) Lewis felt the comment was directed at her because she was dressed well and others were dressed in t-shirts and jeans. (*Id*., p. 105)

2. Kim [last name unknown] and/or Jennifer Borchardt twice failed to introduce Lewis to a new hire while introducing others in the area. (*Id*., pp. 106-109)

3. A lady who worked upstairs said to Nicole Austin: "Don't you hate people that think that they're all that and they're not." (Pl. Dep., pp. 110-112) Lewis was not in this conversation but overheard it and believed that this comment was about her. (*Id*.)

13. Lewis testified that this was a complete list of every incident of race discrimination of any kind at Magna that she was claiming in this lawsuit. (*Id*., p. 104) Lewis further testified that she did not report to Magna any of these alleged incidents. (*Id*., pp. 106, 109, 112)

14. When asked directly at deposition whether anyone at Magna made a racist comment or slur to her, Lewis testified that:

1. While talking about food, her coworker Julie [last name unknown] "said something about ham hocks or beans or greens or chicken or something," and asked "don't you people eat all of that?" (Pl. Dep., p. 97) Lewis just laughed this off. (*Id*.) On another occasion, Julie asked Lewis whether a fur she was wearing was fake and Lewis responded "No, it's a hundred percent rabbit." (*Id*., p. 99)

2. During a conversation about people in general, coworker Kurt Blasius once told Lewis that he usually judges people based on their character,

but he also believed that he was prejudiced. (*Id*., pp. 80, 96) Lewis "just chuckled" in response to this. (*Id*., p. 81)

15. Lewis admitted that she never complained to Magna about any of these comments by Julie or Kurt. (*Id*., pp. 98-99)

16. Lewis further testified that nobody else at Magna made a racist comment or slur of any kind to her:

Q. Apart from the comment from Julie, and the statement by Kurt, nobody else at Magna ever made a racist comment or slur to you of any kind; correct?

A. Correct.

(Pl. Dep., p. 97)

**E. Lewis Fails To Disclose Her Employment Claims Against Magna To The Bankruptcy Court.**

17. Lewis filed a Chapter 13 Bankruptcy Petition in July 2022. (Ex. C, PACER Bankruptcy Docket; Ex. D, 7/16/22 Bankruptcy Petition)

18. In Schedule A/B of her Bankruptcy Petition, which stated her assets, Lewis answered "No" when asked about any claims she may have against third parties, including "employment disputes." (Ex. D, 7/16/22 Bankruptcy Petition, Schedule A/B, Answer 33, p. 13)

19. The Bankruptcy Court entered an order confirming Lewis' Chapter 13 Plan on January 28, 2023. (Ex. E, 1/28/23 Order Confirming Plan)

20. On April 8, 2024, several months after her Magna termination, Lewis sought to modify her Chapter 13 Plan to lower the amount of her monthly payments to creditors under that Plan. (Ex. F, 4/8/24 Post-Confirmation Plan Modification)

21. As part of her effort to modify the Chapter 13 Plan and lower her monthly payments to creditors, Lewis filed an "Affidavit of Debtor, Katrina Lewis" dated April 8, 2024. (Ex. F, Plan Modification, Lewis Affidavit attached at pp. 3-4)

22. In her Affidavit, Lewis stated that she needed lower monthly payments under the Plan because she was terminated from her job and was "supposed to receive severance pay" but had not received it. (*Id*., ¶¶ 1-2)

23. In fact, Lewis had reviewed a proposed Severance Agreement that Magna gave her at the time of her December 2023 termination, understood that Magna was offering her a severance payment if she signed a release of claims against the Company, and decided not to sign it. (Pl. Dep., p. 92)

24. Lewis failed to disclose her discrimination and other claims against Magna, which were known to her, in her April 8, 2024 Affidavit to the Bankruptcy Court. (Ex. F, Plan Modification, Lewis Affidavit attached at pp. 3-4)

25. Lewis failed to disclose her discrimination and other claims against Magna, which were known to her, in her list of assets submitted to the Bankruptcy Court with her Plan Modification. (Ex. F, Plan Modification, pp. 5-8)

26. As part of her effort to modify the Chapter 13 Plan and lower her monthly payments to creditors, Lewis filed an amendment on April 8, 2024 to Schedule I (stating her income) and Schedule J (stating her expenses) of her Bankruptcy Petition. (Ex. G, 4/8/24 Amendment)

27. When amending her Bankruptcy Petition on April 8, 2024, Lewis did not amend Schedule A/B of her Bankruptcy Petition, which stated her assets. (Ex. G, 4/8/24 Amendment, p. 1, not checking box for amendment to Schedule A/B)

28. When amending her Bankruptcy Petition on April 8, 2024, Lewis did not amend in Schedule A/B of her Bankruptcy Petition her original answer of "No" when asked about any claims she may have against third parties, including "employment disputes." (Ex. G 4/8/24 Amendment, p. 1; Ex. D, 7/16/22 Bankruptcy Petition, Schedule A/B, Answer 33, p. 13)

29. On June 25, 2024, the Bankruptcy Court entered an order approving Lewis' requested modification of her Chapter 13 Bankruptcy Plan and lowered her monthly payments to creditors. (Ex. H, 6/25/24 Order)

## ARGUMENT

This Court is very familiar with the summary judgment standard under Rule 56(a), Fed.R.Civ.P. *See, e.g.*, *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.,* 323 F.3d 386, 390 (6th Cir. 2003); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986) ("the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.")

Discrimination and retaliation claims under Elliott-Larsen are analyzed under the same framework as federal law. *Sniecinski v. Blue Cross & Blue Shield of Mich*., 469 Mich. 124, 133–34 (2003).

### A. There is No Direct Evidence of Race Discrimination.

A plaintiff claiming discriminatory discharge must adduce either: (1) direct evidence of discrimination; or (2) circumstantial evidence of discrimination under the well-known *McDonnell Douglas* burden-shifting analysis.

Direct evidence of discrimination is "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.,* 176 F.3d 921, 926 (6th Cir.1999). Direct evidence includes derogatory slurs by the decisionmaker concerning the subject employment decision. The Sixth Circuit has held that discriminatory statements by non-

decisionmakers, or statements by decisionmakers unrelated to the decisional process itself, are not direct evidence of discrimination:

> The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination. Any discriminatory statements must come from decisionmakers to constitute evidence of discrimination. Statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself cannot suffice to satisfy the plaintiff's burden of demonstrating animus. *Geiger v. Tower Auto*., 579 F.3d 614, 620–21 (6th Cir. 2009) (internal citations omitted).

Lewis testified that nobody at Magna other than Julie and Kurt made a discriminatory comment of any kind. (Pl. Dep., p. 97) Thus, neither HR Manager Denise Lumsden (who recommended Lewis' termination) nor Director of Operations Hector Castro-Gonzales (who approved the termination) made a discriminatory statement, let alone a discriminatory statement about the termination decision.

Nor are the alleged comments by Julie (about food and clothing) and Kurt (about being prejudiced) direct evidence of discrimination because: (1) they did not participate in the decision to terminate Lewis' employment; and (2) their comments had absolutely nothing to do with the termination decision. Likewise, the alleged comments by Jennifer Borchardt ("this is not a fashion show" and "we are supposed to be business casual") and the unidentified lady who worked upstairs ("Don't you hate people that think that they're all that and they're not") were made

by non-decisionmakers and were unrelated to the termination decision. Accordingly, none of these comments are probative of discriminatory bias in the termination decision. *See, Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 550–51 (6th Cir. 2004) (holding that supervisor regularly calling plaintiffs "old farts" was not direct evidence of age discrimination because "plaintiffs do not allege that they were made in relation to the decision to discharge the plaintiffs," and an impermissible "inference is required that such a bias may have played a role" in the termination decision).

Moreover, Lewis admits that she never reported any of these alleged comments or otherwise complained to Magna about them. (Pl. Dep., pp. 98-99)

**B. There Is No Circumstantial Evidence of Race Discrimination.**

To establish a *prima facie* case of discrimination using circumstantial evidence, a plaintiff must establish the four elements of the seminal *McDonnell Douglas* test: (1) that she was a member of a protected class; (2) that she was discharged; (3) that she was qualified for the position held; and (4) that she was replaced by someone outside of the protected class. *See Allen v. Highlands Hosp. Corp.,* 545 F.3d 387, 394 (6th Cir. 2008), citing *Minadeo v. ICI Paints,* 398 F.3d 751, 764 (6th Cir. 2005).

As a threshold matter, Lewis cannot establish the fourth prong of the *McDonnell Douglas* test because she was not replaced by anyone after her termination, let alone replaced by someone outside of the protected class.

Following her termination, Lewis' job duties were spread among existing Magna employees. (Ex. B, Lumsden Declaration, ¶ 16) Magna did not hire another Maintenance & Facilities Coordinator at the Sterling Heights facility to fill the job after terminating Lewis. (*Id.*) Under controlling Sixth Circuit law, Lewis was not replaced. *Barnes v. GenCorp, Inc.,* 896 F.2d 1457, 1465 (6th Cir 1990) ("a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work"); *Williams v. Tyco Elec. Corp.*, 161 Fed. Appx. 526, 534-535 (6th Cir. 2006) (holding that supposed replacements "were hired, not to fill a position vacated by" the plaintiff, "but in response to positions that opened after" the plaintiff had been terminated," due to changed circumstances).

**C. Lewis Cannot Meet Her Pretext Burden.**

If a plaintiff establishes a *prima facie* case under the *McDonnell Douglas* framework, and the employer articulates a legitimate and non-discriminatory reason for the termination, then the plaintiff must adduce evidence that the employer's proffered reason is false and a pretext for unlawful discrimination.

The legitimate business reasons for terminating Lewis' employment have been thoroughly explained herein and are set forth in Lumsden's Declaration. Lewis violated the Cell Phone Policy (which had been explained to her in orientation) by calling and texting on her personal cell phone every day during working time. When her supervisor warned her about her personal cell phone use, she lashed out at her coworkers and admits that she called one of them a "stupid bitch" in the workplace.

In order to meet her pretext burden, Lewis must show that the proffered reason: (1) has no basis in fact; (2) did not actually motivate the defendant's challenged conduct; or (3) was insufficient to warrant the challenged conduct. *Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 576 (6th Cir.2003) (en banc).

Lewis can make none of these required showings. There is no evidence that Lewis' conduct did not in fact motivate Lumsden's termination recommendation or Castro-Gonzales' approval of her termination. Nor is there any record evidence that Lewis' conduct was insufficient to motivate Lumsden or Castro-Gonzales. In short, there is no evidence that their reasoning was pretextual or that the termination recommendation and decision were discriminatory.

Pretext is often demonstrated by adducing evidence that a similarly situated employee outside of the protected class engaged in similar conduct as the plaintiff

and was not fired. *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir. 1998) (holding that comparators must be similarly situated in all relevant respects). Here, Lewis cannot show a similarly situated white employee who engaged in the same conduct as Lewis (i.e., violating Magna's personal cell phone policy and calling a coworker a "stupid bitch" in the workplace) who Magna did not terminate.

Rather, Lewis claims only that she noticed Madelyn Borchardt was often on her personal cell phone at work. But Lewis is not similarly-situated to Borchardt because: (1) they performed different jobs; (2) they reported to different people at Magna; (3) unlike Lewis, Borchardt was not warned by her supervisor about her personal cell phone use; and (4) unlike Lewis, Borchardt did not engage in unprofessional conduct and call her coworker a "stupid bitch" in the workplace in response to such a warning. *See*, Exhibit B, Lumsden Declaration, ¶ 8; *Clayton v. Meijer, Inc*., 281 F.3d 605, 610–12 (6th Cir. 2002) (affirming summary judgment where proposed white comparators were not similarly situated because their misconduct did not cause comparable harm). Lewis cannot establish pretext with an apples-to-oranges comparison to Borchardt.

Summary judgment is independently warranted under the Sixth Circuit's honest-belief rule: when decisionmakers reasonably rely on particularized facts, a plaintiff cannot show pretext by quarreling with the employer's good-faith

judgment. *Smith v. Chrysler Corp.*, 155 F.3d 799, 806–07 (6th Cir. 1998); *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012). Here, Magna relied on information from both Lewis' manager Aaron Harvat, and multiple coworker statements after the December 6 warning, to conclude that Lewis had spent significant time on her personal cell phone instead of working and had a profane outburst in response to that warning. Lewis cannot show pretext by disputing Magna's honest belief that her termination was warranted under these circumstances.

**D. Lewis' Retaliation Claim Fails Because She Admits That She Did Not Engage In Protected Activity.**

In order to state a *prima facie* case of retaliation under § 1981 and Elliott-Larsen, a plaintiff must show that: (1) she engaged in protected activity; (2) the employer knew about that activity; (3) the employer then took a materially adverse action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse action. *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 775 (6th Cir. 2018).

Here, Lewis cannot establish that she engaged in protected activity because she admits that she never complained about discrimination or harassment of any kind during her employment at Magna:

> Q. Okay. Okay. You, in fact, never complained of discrimination or harassment of any kind during your employment at Magna; correct?

A. No.

Q. Is that true?

A. That's true.

(Pl. Dep., p. 112)

Lewis further testified that she believes that she was fired in retaliation for "disrespecting" Madelyn Borchardt, the daughter of Human Resources employee Jennifer Borchardt, after calling Madelyn a "stupid bitch." (Pl. Dep., p. 113) That is not protected activity upon which a retaliation claim can rest. *Washington v. Sodecia Auto.*, 2025 WL 2965835, at *3 (6th Cir. Oct. 21, 2025)(affirming dismissal of retaliation claim where plaintiff failed to complain about race discrimination). In addition to failing to demonstrate protected activity, Lewis has adduced no evidence that such activity was the "but for" cause of her termination. *Patel v. Trinity Health Corp.*, No. 20-10517, 2021 WL 4894637, at *14 (E.D. Mich. Oct. 20, 2021).

Summary judgment is further warranted because Lewis cannot show (for the same reasons stated in Section C on pretext above) that Magna's legitimate business reasons for her termination were a pretext for unlawful retaliation. *Herrera v. Churchill McGee, LLC*, 545 F. App'x 499, 500–03 (6th Cir. 2013) (affirming summary judgment on § 1981 retaliation claim where plaintiff offered

no evidence that employer's legitimate, non-retaliatory explanation for his discharge was pretextual).

**E. Lewis' Michigan Public-Policy Wrongful-Discharge Claim Fails As A Matter of Law Because § 1981 and Elliott-Larsen Provide Her An Exclusive And Adequate Remedy.**

Michigan law recognizes a narrow exception to the at-will employment doctrine when a termination is so contrary to public policy as to be actionable. *Suchodolski* v. *Michigan Consol. Gas Co*., 412 Mich. 692, 695 (1982). But a public policy claim is unavailable when a statute already provides the plaintiff with an exclusive and adequate remedy for retaliation. *Stegall v. Res. Tech. Corp.*, 514 Mich. 327, 340-43 (2024)(holding that when a statutory anti-retaliation framework provides the plaintiff an adequate remedy, it is exclusive and a duplicative public policy tort under Michigan law is preempted).

Both § 1981 and Elliott-Larsen prohibit retaliation and provide comprehensive remedies to plaintiffs, including damages, equitable relief, and fee-shifting. Both statutes have fair statutes of limitations. And § 1981 provides for punitive damages. Given these wholly adequate remedial frameworks, the duplicative Michigan public policy tort for wrongful discharge is unavailable to Lewis. Indeed, after *Stegall,* this Court has dismissed public-policy claims as duplicative in numerous cases where Elliott-Larsen and Title VII claims cover the same retaliatory discharge facts. *Kamal v. Ford Motor Co.,* No. 24-12073, 2025

WL 1691193, at 3 (E.D. Mich. June 16, 2025)*; Haidar v. Walmart Inc.*, No. 24-12061, 2025 WL 1799318, at *3 (E.D. Mich. June 25, 2025).

Moreover, Lewis has not alleged that she was terminated for "exercising a right guaranteed by law, executing a duty required by law, or refraining from violating the law" – the only three groups of public policy exceptions that serve as the basis for a wrongful termination claim. *Landin v. Healthsource Saginaw, Inc.*, 305 Mich. App. 519, 526 (Mich. 2014); *Stegall*, 514 Mich. at 340. Her public policy claim thus fails on the merits as well.

**F. Lewis' Claims Against Magna Are Barred By Judicial Estoppel Because She Failed To Disclose Them To The Bankruptcy Court.**

On April 8, 2024, four months after her December 2023 termination from Magna, Lewis filed several pleadings in the United States Bankruptcy Court for the Eastern District of Michigan seeking to modify her Chapter 13 Bankruptcy Plan to lower her monthly payments to creditors. (Ex. F, 4/8/24 Post-Confirmation Plan Modification; Ex. G, 4/8/24 Amendment)

Those pleading included the Affidavit of Debtor, Katrina Lewis. (Ex. F, Plan Modification, Lewis Affidavit attached at pp. 3-4) In her Affidavit, Lewis stated that she needed lower monthly payments under the Chapter 13 Plan because she was terminated from her job and was "supposed to receive severance pay" but had not received it. (*Id.*, ¶¶ 1-2)

In fact, Lewis had reviewed a proposed Severance Agreement that Magna gave her at the time of her December 2023 termination, understood that Magna was offering her a severance payment if she signed a release of claims against the Company, and decided not to sign it. (Pl. Dep., p. 92)

After deciding not to release her claims against Magna in exchange for a severance payment, Lewis failed to disclose the existence of those claims against Magna: (1) in the Affidavit itself; and (2) in her list of assets submitted to the Bankruptcy Court with her Plan Modification. (Ex. F, Plan Modification, Lewis Affidavit attached at pp. 3-4; Liquidation Analysis at pp. 5-8)

What is more, Lewis filed an amendment on April 8, 2024 to Schedule I (stating her income) and Schedule J (stating her expenses) of her Bankruptcy Petition. (Ex. G, 4/8/24 Amendment) But Lewis did not amend Schedule A/B of her Bankruptcy Petition, which stated her assets. (Ex. G, 4/8/24 Amendment, p. 1, not checking box for amendment to Schedule A/B). Lewis thus left in place her answer of "No" when asked about any claims she may have against third parties, including "employment disputes." (Ex. G 4/8/24 Amendment, p. 1; Ex. D, 7/16/22 Bankruptcy Petition, Schedule A/B, Answer 33, p. 13)

The Bankruptcy Court relied upon these pleadings, entered an order approving Lewis' requested modification of her Chapter 13 Bankruptcy Plan, and lowered her monthly payments to creditors. (Ex. H, 6/25/24 Order)

The doctrine of judicial estoppel protects courts by prohibiting litigants from deliberately taking incompatible positions in civil actions and bankruptcy proceedings. The Sixth Circuit has held that judicial estoppel applies to a civil action where: (1) the plaintiff took a position contrary to one asserted under oath in bankruptcy; (2) the bankruptcy court adopted the earlier position; and (3) the omission was not the product of mistake or inadvertence. *See*, *White v. Wyndham Vacation Ownership, Inc*., 617 F.3d 472, 476 (6th Cir. 2010)(affirming summary judgment on judicial estoppel, barring an employee's Title VII/sexual harassment suit because she didn't disclose the claim in her Chapter 13 case).

"To determine whether a debtor's omission of a claim from a bankruptcy petition resulted from mistake or inadvertence, courts consider whether: (1) the debtor had knowledge of the facts underlying the undisclosed claims; (2) the debtor had motive to conceal the undisclosed claims; and (3) the omission was made in bad faith." *Stanley v. FCA US, LLC*, 51 F.4th 215, 219 (6th Cir. 2022). The burden is on the non-reporting petitioner "to provide evidence showing an absence of bad faith." *Id.* at 221.

Here, Lewis refused to sign a release of claims against Magna in exchange for a severance payment at the time of her termination. She then failed to disclose those claims against Magna in her Affidavit (sworn under oath) and other pleadings to the Bankruptcy Court when seeking to cut her monthly payments to

creditors. After securing the lower payments, she filed this lawsuit against Magna. That is the precise inconsistency that judicial estoppel is intended to prevent.

The Bankruptcy Court relied on Lewis' sworn Affidavit and other pleadings, granted the post-confirmation modification, and lowered her payments. And there was no mistake or inadvertence by Lewis because: (1) she knew about the claims against Magna (and she had rejected a severance payment specifically to pursue them) before seeking modification; (2) she had an incentive to conceal her potential recovery against Magna to benefit herself at the expense of her creditors; and (3) she acted in bad faith by asking for and obtaining reduced payments without disclosing the claims. *White*, 617 F.3d at 479-82; *Stanley*, 51 F.4th at 221.

On these facts, Lewis cannot meet her burden to provide evidence showing the absence of bad faith. This Court should thus enter summary judgment on all of Lewis' undisclosed employment claims under the judicial estoppel doctrine. *See White*, 617 F.3d at 476–82; *Nieves v. Kiekert AG*, No. 20-11467, 2021 WL 2936647, at *3 (E.D. Mich. July 13, 2021)(dismissing Title VII case under judicial estoppel where plaintiff failed to disclose those claims to bankruptcy court).

**CONCLUSION**

For these reasons, this Court should grant summary judgment to Magna and dismiss Lewis' claims in their entirety.

Respectfully submitted,

KIENBAUM HARDY
VIVIANO PELTON FORREST, P.L.C.

By: *<u>/s/ Willam B. Forrest III</u>*
William B. Forrest III (P60311)
Sean T.H. Dutton (P77515)
Attorneys for Defendant
280 N. Old Woodward Avenue,
Suite 400
Birmingham, MI 48009
(248) 645-0000
wforrest@khvpf.com
sdutton@khvpf.com

Dated: November 14, 2025
588395

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2025, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all parties of record.

*/s/William B. Forrest III*
Kienbaum Hardy Viviano
Pelton & Forrest, P.L.C.
280 N. Old Woodward Ave., Suite 400
Birmingham, MI 48009
(248) 645-0000
wforrest@khvpf.com
(P60311)