**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| KATRINA LEWIS,<br><br>Plaintiff,<br><br>VS.<br><br>MAGNA SEATING OF AMERICA, INC., d/b/a MAGNA POWERTRAIN,<br><br>Defendant. | ) | Case No. 2:24-cv-13285<br><br>Hon. Brandy R. McMillion |

**PLAINTIFF'S RESPONSE TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

NOW COMES, Plaintiff, Katrina Lewis, by and through her attorneys, Carla D. Aikens, P.L.C., and for her Response to Defendant's Motion for Summary Judgment, states as follows:

Plaintiff, Katrina Lewis, (hereinafter referred to as "Plaintiff" or "Ms. Lewis"), an African American woman, brings this action alleging that Defendant, MAGNA SEATING OF AMERICA, INC., (hereinafter referred to as "Defendant" or "MAGNA"), discriminated and retaliated against her in violation of Section 1981 and ELCRA. Defendant's motion seeks to obscure key factual disputes and improperly invites the Court to make credibility determinations on summary

judgment. Viewing the evidence in the light most favorable to Plaintiff, genuine issues of material fact exist and require resolution by a jury.

WHEREFORE Plaintiff requests that this Honorable Court deny Defendant's Motion for Summary Judgment in its entirety and grant such other relief as deemed necessary and appropriate in the Court's discretion.

Dated: December 4, 2025

Respectfully Submitted,

/s/ Thameka I. Hall
Carla D. Aikens (P69530)
Thameka I. Hall (P79693)
CARLA D. AIKENS, P.C.
*Attorneys for Plaintiff*
615 Griswold Street, Ste. 709
Detroit, MI 48226
carla@aikenslawfirm.com
thameka@aikenslawfirm.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| KATRINA LEWIS, | ) | |
| | ) | Case No. 2:24-cv-13285 |
| Plaintiff, | ) | |
| | ) | Hon. Brandy R. McMillion |
| VS. | ) | |
| | ) | |
| MAGNA SEATING OF AMERICA, | ) | |
| INC., d/b/a MAGNA POWERTRAIN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

**BREIF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**STATEMENT OF ISSUES PRESENTED ……………………………...……3**

**TABLE OF AUTHORITIES ………………………………………………..4**

**INTRODUCTION ........................................................................................ 1**

**STATEMENT OF FACTS ........................................................................... 1**

**STANDARD OF REVIEW........................................................................... 1**

**ARGUMENT ................................................................................................ 7**

**CONCLUSION ......................................................................................... 19**

## STATEMENT OF ISSUES PRESENTED

1. Do Plaintiff Lewis' race discrimination claims under 42 U.S.C. §1981 and the Elliott–Larsen Civil Rights Act fail where the record evidence confirms: (a) no direct evidence of discrimination; (b) no comparator who engaged in similar conduct as Lewis without being terminated; and (c) that Lewis was not replaced after her termination?

   Defendant answers: Yes
   Plaintiff answers: No

2. Do Plaintiff Lewis' retaliation claims under § 1981 and Elliott-Larsen fail where she admits she never complained to Magna of discrimination or harassment of any kind, and thus engaged in no protected activity?

   Defendant answers: Yes
   Plaintiff answers: No

3. Is Plaintiff Lewis' Michigan public-policy wrongful-discharge claim barred because § 1981 and Elliott-Larsen provide adequate, exclusive statutory remedies addressing the same alleged conduct?

   Defendant answers: Yes
   Plaintiff answers: No

4. Are Plaintiff Lewis' claims barred by judicial estoppel where she, while seeking a Chapter 13 plan modification to lower her monthly payments to creditors, failed to disclose her employment claims against Magna to the Bankruptcy Court?

   Defendant answers: Yes
   Plaintiff answers: No

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)....................................7
*Blair v. Henry Filters, Inc.*, 505 F.3d 517, 529 (6th Cir. 2017) .............................10
*Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 757 (6th Cir. 2012) ....................11
*Celotex Corp v. Catrett*, 477 US 317, 322-323 (1986)............................................7
*Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579 (6th Cir. 2002) ...........................9
*Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 .................................10
*Hamilton v. Gen. Elec, Co.*, 556 F.3d 428 (6th Cir. 2009) .....................................16
*Hazel v. Ford Motor Co.*, 464 Mich. 456 (2001) ...................................................10
*Hittle v. Stockton,* No. 24-427, 601 US__, at (Mar. 10, 2025) ................................8
*Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir. 1999) ................................10
*Landin v. Healthsource Saginaw, Inc.*, 305 Mich. App. 519, 527-28 (2014).........17
*MacDonald-Bass v. J.E. Johnson Contracting, Inc.*, 493 F.App'x 718, 726 (6th Cir. 2012) ...........................................................................................................11
*Marzano v. Computer Science Corp.*, 91 F.3d 497, 509-510 (3rd Cir. 1996) ..........7
*McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360 (7th Cir. 2019)............8
*McDonnell Douglas v. Green*, 411 U.S. 792 (1973) ...............................................9
*Miles v. South Cent. Human Res. Agency, Inc.*, 946 F.3d 883 (6th Cir. 2020)........11
*Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) .........................................7
*New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001) ......................................18
*Pettway v. City of Detroit*, 448 Mich. 247 (1995) .................................................10
*Radtke v. Everett*, 442 Mich. 368 (1993) ...........................................................10
*St. Mary's Honor Center v. Hicks*, 509 US 502, 521 (1993)...................................8
*Suchodolski v. Mich. Consol. Gas Co.*, 412 Mich. 692, 695 (1982).......................17
*Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1167 (6th Cir. 1996).............11
*Tingle v. Arbors at Hilliard*, 692 F.3d 523 (6th Cir. 2012) ....................................12
*White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 476-78 (6th Cir. 2010) ..........................................................................................................18

## Rules

Fed. R. Civ. P. 56(c).............................................................................................7

## INTRODUCTION

Plaintiff, Katrina Lewis, brought this Complaint against Defendant for claims of discrimination and retaliation in violation of Section 1981 and ELCRA, when she was subjected to racial discrimination leading to a hostile work environment and ultimately terminated by Defendant.

## COUNTERSTATEMENT OF FACTS

1. Admitted. Plaintiff further adds that she was never disciplined or written up for any reason regarding her performance prior to her termination. ECF No. 13-2, 167:10-12.
2. Denied. Defendant MAGNA did not have cell phone policies in the office area that Plaintiff worked in, nor did Plaintiff ever receive any documents regarding a cell phone/electronics policy or attend any meeting regarding the same. *Id*. at 50:4-22; 52:1-12.
3. Denied. Plaintiff did not believe the Cell Phone Policy shown to her during new hire orientation applied to her position as a maintenance coordinator because she did not work on the production floor as the policy describes. *Id*. at 176:10-20; ECF No. 13-2, PageID.179.
4. Denied in part. Plaintiff was told during the termination meeting by HR manager Denise Lumsden that the basis for her termination was professional misconduct, specifically, related to calling another employee “stupid bitch”

and her personal cell phone usage was never mentioned. ECF No. 13-2, 87:6-14; 89:18-25.

5. Denied in part. See ¶ 4.
6. Denied. Prior to her termination, Plaintiff was never disciplined or written up for any issues relating to her cell phone use, professional conduct, or work performance. *Id*. at 169:10-171:25. Further, Plaintiff was told during the termination meeting by HR manager Denise Lumsden that the basis for her termination was professional misconduct, specifically, related to calling another employee "stupid bitch" and her personal cell phone usage was never mentioned. *Id*. at 87:6-14; 89:18-25.
7. Admitted in part. See ¶ 4.
8. Denied. Plaintiff was never told about any investigations that were performed or conducted relating to her termination. *Id*. at 185:13-16.
9. Denied. Plaintiff was never told about any investigations that were performed or conducted relating to her termination. *Id*. at 185:13-16.
10. Denied in part. Plaintiff was never told about any investigations that were performed or conducted relating to her termination. *Id*. at 185:13-16.
11. Denied in part. Plaintiff was never given information regarding reporting procedures relating to discrimination and harassment. *Id*. at 178:19-179:4.

12. Admitted. Plaintiff further adds there were only two African-American employees in her department (including herself). *Id*. at 164:19-24.

13. Denied. Plaintiff experienced multiple incidents involving racially offensive comments, including comments made by coworker Julie and Kurt Blasius. *Id*. at 95:22-97:7.

14. Admitted.

15. Denied in part. Plaintiff was never given information regarding reporting procedures relating to discrimination and harassment. *Id*. at 178:19-179:4.

16. Admitted.

17. Admitted.

18. Admitted.

19. Admitted.

20. Admitted. Plaintiff further adds she was under the assumption she would still receive a severance pay although she didn't sign the release. *Id*. at 155:5-12.

21. Admitted. Plaintiff further adds she was under the assumption she would still receive a severance pay although she didn't sign the release. *Id*. at 155:5-12.

22. Admitted. Plaintiff further adds she was under the assumption she would still receive a severance pay although she didn't sign the release. *Id*. at 155:5-12.

23. Denied. Plaintiff further adds she was under the assumption she would still receive a severance pay although she didn't sign the release. *Id*. at 155:5-12.

24. Denied. Plaintiff filed her Complaint against Defendant on December 10, 2024, which was after she petitioned to amend and modify her bankruptcy. ECF No. 1.

25. Denied. Plaintiff filed her Complaint against Defendant on December 10, 2024, which was after she petitioned to amend and modify her bankruptcy. ECF No. 1.

26. Admitted.

27. Admitted. Plaintiff further adds she filed her Complaint against Defendant on December 10, 2024, which was after she petitioned to amend and modify her bankruptcy. ECF No. 1.

28. Admitted. Plaintiff further adds she filed her Complaint against Defendant on December 10, 2024, which was after she petitioned to amend and modify her bankruptcy. ECF No. 1.

29. Admitted.

## ADDITIONAL STATEMENT OF FACTS

1. Plaintiff's coworker Madelyn Borchardt is a white female and daughter of Human Resource manager Jennifer Borchardt. *Id*. at 113:1-16, 165:1-3; 189:15-22.

2. According to Defendant's Employee Handbook, Defendant has an "Employment of Relatives" policy stating that relatives of persons currently

employed may be hired only if they will not work in a supervisor/subordinate relationship or create a conflict of interest, as the situation may violate the employee charter and have a negative impact on employee morale. *Id*. at 167:17-168:16.

3. Further, Defendant violated its own policy by terminating Plaintiff based solely on an alleged investigation handled by HR Manager Jennifer Borchardt that included complaints reported by her daughter/employee Madelyn Borchardt. ECF No. 13-3, PageID.186-92.
4. The Open-Door Policy section of Defendant's Employee Handbook did not contain information about anti-discrimination, anti-harassment, or anti-retaliation. ECF No. 13-2, 178:2-18.
5. Plaintiff never received any resources relating to anti-discrimination, anti-retaliation, or anti-harassment, including reporting complaints. *Id* at 177:7-12; 178:19-179:4.
6. Defendant has a Cell Phone Policy that permits the use of cell phones in the building, allowing employees to have access during breaks and lunch only off the production floor. Further, Plaintiff did not work on the production floor. *Id*. at 174:12-16; 175:1-10; 176:1-20.

7. Prior to her termination, Plaintiff was never disciplined or written up for any issues relating to her cell phone use, professional conduct, or work performance. *Id*. at 169:10-171:25.
8. Plaintiff never received performance evaluations during her employment with Defendant. *Id*. at 166:23-167:2.
9. Plaintiff was never told about any investigations that were performed or conducted relating to her termination. *Id*. at 185:13-16.
10. Plaintiff reported to her supervisor Alex Shepherd that coworker Madelyn Borchardt used her personal cell phone during work hours often. *Id*. at 64:25-65:3.
11. Coworker Julie made a racist comment to Plaintiff during a conversation about food, while discussing “ham hocks” “beans” “greens” and “chicken”, Julie asked "Don't you people eat all of that?" When Plaintiff asked "What?", Julie clarified "You people" and when asked who she was referring to, Julie said "You, black people." *Id*. at 97:9-20.
12. Coworker Kurt Blasius acknowledged to Plaintiff that he was prejudice. *Id*. at 96:21-97:3.

## STANDARD OF REVIEW

As a threshold matter, summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material facts for trial and the party

is entitled to judgement as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp v. Catrett*, 477 US 317, 322-323; 106 S.CT. 2548; 91 L.Ed.2d 265 (1986). When considering a motion for summary judgment, the District Court "must view the evidence in a light most favorable to the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 US 242, 251-52; 106 S.CT. 2505; 91 L.Ed.2d 202 (1986). Finally, the Court must accept as true to the text of the note any direct evidence offered by the nonmoving party, in opposition to the Summary Judgment motion. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004).

When there is evidence an employee has suffered discrimination in the workplace, courts use great caution in granting summary judgment. *Gallo v. Prudential Residential Services Partnership*, 22 F.3d 1219, 1223-1224 (2nd Cir. 1994). *Marzano v. Computer Science Corp.*, 91 F.3d 497, 509-510 (3rd Cir. 1996)

Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Plaintiff submits that, utilizing this standard, the Court should reject Defendant's position and deny summary judgment.

## ARGUMENT

### I. *McDonnell Douglas* Burden-Shifting Framework is Not a Substantive Legal Standard.

Defendant's motion seeks to sidestep the overwhelming factual disputes in this case by invoking the *McDonnell Douglas* burden-shifting framework. But *McDonnell Douglas* is not a rigid, mechanical formula that allows dismissal of a discrimination case despite evidence of discriminatory intent. As Justice Clarence Thomas dissented in *Hittle v. Stockton,* No. 24-427, 601 US__, at (Mar. 10, 2025) (Thomas, J., dissenting from denial of cert.), opining that *McDonnell Douglas* was a procedural device designed only to establish an order of proof and production when evaluating circumstantial evidence. (quoting *St. Mary's Honor Center v. Hicks*, 509 US 502, 521 (1993). Courts have erroneously treated *McDonnell Douglas* as a substantive legal standard that a plaintiff must establish to survive summary judgment or to ultimately prove a claim. *Id*. Justice Thomas further opined that satisfying *McDonnell Douglas* is not the only way or even the best way to prove a claim and the prima facie proof will vary depending on the facts of a Title VII claim. *Hittle*, 601 US at __ (Thomas, J., dissenting). A Title VII claim should survive summary judgment so long as the plaintiff establishes a genuine dispute of material fact about each element of his claim. *Id*.

In *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360 (7th Cir. 2019), the court stated:

> The *McDonnell Douglas* framework is not the only method plaintiffs may use to prove their claim. It is merely one way of culling the relevant evidence needed to demonstrate whether a reasonable factfinder could

> conclude that an employer engaged in an adverse employment action based on the plaintiff's age or another proscribed factor. However, the plaintiff chooses to proceed, at the summary judgment stage the court must consider all evidence to decide whether a reasonable jury could find that the plaintiff suffered an adverse employment action because of her age. The court therefore also assesses the evidence as a whole, rather than asking whether any particular piece of evidence proves the case by itself.

## II. Under *McDonnell Douglas*, Plaintiff Satisfied the Prima Facie for Discrimination of Section 1981 and ELCRA Claims.

*McDonnell Douglas v. Green* establishes a prima facie case of discrimination by showing: (1) membership in a protected class; (2) she was meeting the defendant's legitimate expectations; (3) adverse employment action; and (4) circumstances giving rise to an inference of discrimination, sometimes shown by similarly situated individuals outside the protected class were treated more favorably. 411 U.S. 792 (1973).

Even if the Court were to apply the *McDonnell Douglas* framework, it provides that once a plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse action. The burden then shifts back to the plaintiff to demonstrate that the stated reason is a pretext for discrimination. *See Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 589 (6th Cir. 2002).

Further, Michigan courts analyze ELCRA discrimination and retaliation claims under the same standards as Section 1981 and Title VII. *Jackson v. Quanex*

*Corp.*, 191 F.3d 647, 658 (6th Cir. 1999); *Hazel v. Ford Motor Co.*, 464 Mich. 456, 462-63 (2001); *Pettway v. City of Detroit*, 448 Mich. 247, 258 (1995). Evidence supporting Plaintiff's federal claims likewise supports his state law claims. While Michigan courts are not compelled to follow federal precedent or guidelines in interpreting Michigan law, Michigan courts may, in discrimination cases, turn to federal precedent for guidance in reaching decisions. *Radtke v. Everett*, 442 Mich. 368, 382-83 (1993).

Defendant specifically argues that Plaintiff fails to satisfy the fourth prong of her prima facie and that the reasons for its actions were pretextual. However, prior to the burden shift requiring Plaintiff to show pretext, Defendant has the burden of providing a legitimate, nondiscriminatory reason for its actions, which Defendant will be unable to show.

**A. Plaintiff Has Shown an Inference of Pretext or Discriminatory Intent without a Similarly Situated Comparator.**

Relative to Defendant's argument regarding Plaintiff's failure to show a similarly situated person, the precise contours of the similarly situated inquiry depend on the facts and context of each case. It is not a rigid requirement. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir. 1998). Although evidence that a similarly situated employee was treated differently can help establish the requisite inference of discrimination, the law does not require such evidence in every case. *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 529 (6th Cir. 2017). Comparator evidence is only

one means of establishing pretext or discriminatory intent; the plaintiff is not required to demonstrate an exact correlation with the employee receiving more favorable treatment. *Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741 (6th Cir. 2012). A different rule would mean employees are required to work with individuals outside of their protected class to prove discrimination, which is contrary to law.

### B. Defendant Fails to Show Legitimate, Nondiscriminatory Reason for Plaintiff's Termination.

Defendant has multiple reasons for Plaintiff's termination that are unsupported by evidence. Under the Sixth Circuit precedent, an employer's shifting termination rationales are evidence that the proffered rationale may not have been the true motivation for the employer's actions. *Miles v. South Cent. Human Res. Agency, Inc.*, 946 F.3d 883 (6th Cir. 2020). An employer's changing rationale for making an adverse employment decision can be evidence of pretext. *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1167 (6th Cir. 1996). Further, providing additional, non-discriminatory reasons that do not conflict with the one stated at the time of the discharge does not constitute shifting justifications. *MacDonald-Bass v. J.E. Johnson Contracting, Inc.*, 493 F. App'x 718, 726 (6th Cir. 2012).

To defeat a summary judgment motion, a plaintiff must produce sufficient evidence from which the jury could reasonably reject a defendant's explanation and infer that the defendant did not honestly believe in the proffered nondiscriminatory reason for its adverse employment action. *Tingle v. Arbors at Hilliard*, 692 F.3d 523

(6th Cir. 2012). The key inquiry is whether the employer made a reasonably informed and considered decision before taking the complained-of action. *Id*. at 531.

### i. Defendant's Records Reflect Performance as Basis for Plaintiff's Termination.

According to the termination checklist, Defendant checked "performance" as the basis for her separation of employment. (**Exhibit A – Termination Checklist and Note**). On the same checklist, other boxes remain unchecked including "policy violation." *Id*. Yet, Defendant argues that Plaintiff's violation of the Cell Phone Policy was a basis for her termination. Prior to her termination, Plaintiff was never disciplined or written up for any issues relating to her cell phone use, professional conduct, or work performance. ECF No. 13-2, 169:10-171:25. Further, Plaintiff was told during the termination meeting by HR manager Denise Lumsden that the basis for her termination was professional misconduct, specifically, related to calling another employee "stupid bitch" and her personal cell phone usage was never mentioned. *Id*. at 87:6-14; 89:18-25.

Denise Lumsden made a written note during the termination meeting. (**Exhibit A – Termination Checklist and Note**). The note stated that during the meeting, Plaintiff asked supervisor Alex Shepherd whether he had any issues with her, which he replied "no, not his decision." It was clear that Alex did not support the decision to terminate Plaintiff. During the termination meeting, when Denise Lumsden

claimed there were issues with Plaintiff's work, Alex Shepherd contradicted this by affirming he never had issues with Plaintiff's work performance. ECF No. 13-2, 90:21-23. Alex also confirmed that Plaintiff would approach him whenever she needed work, contradicting allegations about her not working. *Id*. at 87:1-5; 91:3-7.

### C. Plaintiff Has Shown Similarly Situated Comparators Outside of Her Protected Class.

Defendant argues that Plaintiff's comparator Madelyn Borchardt is not similarly situated because Plaintiff and Madelyn performed different jobs, reported to different people, Madelyn was not warned about personal cell phone usage, and Madelyn did not call a coworker a "stupid bitch." Consequently, Madelyn was not subjected to the same allegations or discipline as Plaintiff because Madelyn's mother Jennifer Borchardt was HR manager. *Id*. at 166:11. This form of nepotism is a complete violation of Defendant's Employment of Relatives Policy. *Id*. at 167:17-168:16. Even Alex warned Plaintiff to be careful about making accusations against Madelyn stating she didn't want to cross Jennifer because she was vindictive. *Id*. at 65:21-68:5.

Jennifer and Denise conspired to develop an investigation by collecting statements from Madelyn, Nicole Austin, and Dyste Juncevic regarding Plaintiff being "toxic" to the work environment in retaliation of Plaintiff allegedly calling Madelyn a "stupid bitch." ECF No. 13-3, PageID.180-192. Plaintiff was never

presented with any documentation supporting the allegation against her as a basis for her termination. *Id*. at 172:14-17. Defendant did not exhaust any progressive disciplinary steps pursuant to its Progressive Discipline Policy prior to Plaintiff's termination. *Id*. at 169:10-171:25. Plaintiff reported to her supervisor Alex that coworker Madelyn Borchardt used her personal cell phone during work hours often. *Id*. at 64:25-65:3. Yet, as Defendant argues, Madelyn was never disciplined for personal cell phone usage. Defendant's cell phone policy does not provide

Taken together, these facts allow an inference of discrimination without needing to identify a similarly situated person creating a triable question of fact as to whether Defendant's stated reasons are a pretext for racial discrimination. Summary judgment must therefore be denied as a matter of law.

**D. Plaintiff Did Engage in Protected Activity.**

- On **December 6, 2023**, Plaintiff received a text message from Alex stating she needed to be careful about her personal cell phone usage. *Id*. at 61:22-25 and 62:1-3.
- Later that same day, Plaintiff reported to her supervisor Alex that her white coworker Madelyn Borchardt used her personal cell phone during work hours after alleged complaints were made about Plaintiff regarding the same. *Id*. at 64:25-65:3. In response, Alex warned Plaintiff to be careful

about making accusations against Madelyn because she didn't want to cross Jennifer as she was vindictive. *Id*. at 65:21-68:5.

- On **December 6, 2023**, Plaintiff called Madelyn a "stupid bitch" to Nicole.
- On **December 7, 2023**, Jennifer received an email from Dyste Juncevic accusing Plaintiff of having a "bad attitude" and making negative comments about Madelyn. ECF No. 13-3, PageID.192.
- That same day, Jennifer received another email from Nicole Austin reporting that Plaintiff told her not to trust Madelyn because she reported Plaintiff to her mother Jennifer, that Plaintiff asked her and Madelyn "what the fuck are you staring at?" and that Plaintiff expressed to her how she was offended for being called a thief. ECF No. 13-3, 188-190.
- On **December 13, 2023**, Madelyn sent an email to her mother Jennifer and Denise summarizing her "concerns" with Plaintiff including accusations of Plaintiff creating a toxic work environment. ECF No. 13-3, PageID.186-187.
- On **December 14, 2023**, Plaintiff was called into a meeting with Denise and Alex where she was told by Denise she was being terminated for professional misconduct, specifically, related to calling another employee "stupid bitch." ECF No. 13-2, 87:6-14; 89:18-25.

Even without comparator evidence, plaintiffs may show an inference of discrimination through temporal proximity between protected activity or complaints and adverse action. *Mickey v. Zeidler Tool & Die Co*., 516 F.3d 516 (6th Cir. 2008). Suspicious timing of new policies targeting the plaintiff after complaints show an inference of discrimination. *Hamilton v. Gen. Elec, Co.*, 556 F.3d 428 (6th Cir. 2009) (finding timing and disparate treatment sufficient to survive summary judgment). Suspicious timing coupled with evidence of selective enforcement suffices to create a triable issue. *Id*. The close timing between Plaintiff's comment about Madelyn, the text message from Alex about her personal phone usage, Plaintiff's complaint about Madelyn's personal phone usage, Defendant's investigation and her termination, combined with Defendant's selective enforcement of its policies, provides a reasonable basis for a jury to infer unlawful motive further suggesting Defendant's stated reasons were not the actual motivation. Such temporal correlation can support the finding of discriminatory motive. *Id*.

Here, a reasonable jury can conclude that Jennifer and Denise retaliated against Plaintiff by conspiring to develop an investigation including collecting statements from Madelyn, Nicole Austin, and Dyste Juncevic leading to Plaintiff's termination. Thus, summary judgment is inappropriate.

**III. Plaintiff's Public Policy Claim Is Valid.**

Public policy claims arise when an employee is discharged (1) for exercising a right conferred by a well-established legislative enactment, (2) for refusing to violate the law, or (3) for reporting or opposing conduct that is clearly illegal or contrary to public policy. *Suchodolski v. Mich. Consol. Gas Co.*, 412 Mich. 692, 695 (1982). Terminating an employee for opposing or reporting discriminatory practices squarely violates the public policy of this state, which strongly condemns discrimination in employment on the basis of race. *Id.*

Michigan court recognizes that a public policy claim may proceed where it is not coextensive with the ELCRA claim, meaning it is based on a different source of public policy. The Michigan Supreme Court reaffirmed that public policy protects employees who are terminated for reporting or opposing unlawful conduct in the workplace, i.e. reporting disparate treatment of black employees, rather than merely asserting rights under ELCRA. See *Landin v. Healthsource Saginaw, Inc.*, 305 Mich. App. 519, 527-28 (2014). Further, conduct not covered under discrimination laws such as a an employer terminating an employee for reporting another employee's wrongful conduct and demonstrating frustration because of nepotism could be found to violate public policy.

Here, Plaintiff's termination was evidence of retaliation for calling out Defendant's nepotism. Such conduct falls within the heart of Michigan's public policy protecting individuals who oppose unlawful discrimination. To allow

Defendant to escape liability under the guise of "at-will" employment or fabricated claims of poor performance, behavior, and professionalism would undermine the legislative and moral foundation of the ELCRA and the state's long standing public policy favoring equal opportunity and workplace fairness.

## IV. Judicial Estoppel Does Not Bar Plaintiff's Claims.

Defendant fundamentally misstates the law governing judicial estoppel. The doctrine applies only where (1) the plaintiff took a clearly inconsistent position under oath in a prior judicial proceeding; (2) the bankruptcy court accepted that position; and (3) the plaintiff acted with intent to mislead the court. *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001); *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 476-78 (6th Cir. 2010).

Judicial estoppel is inappropriate in cases of conduct, amounting to nothing more than mistake or inadvertence. *Id*. Inadvertence applies if the debtor (1) lacked knowledge of the factual basis; (2) lacked motive; or (3) did not understand the legal significance of the claims. Here, it is unclear the relevancy of Plaintiff's bankruptcy proceedings to Plaintiff's claims against Defendant. Plaintiff filed her Complaint against Defendant on December 10, 2024, which was after she petitioned to amend and modify the terms of her bankruptcy. ECF No. 1. Further, Plaintiff she was under

the assumption she would still receive a severance pay although she didn't sign the release. *Id*. at 155:5-12. Thus, Plaintiff's claims are not barred by judicial estoppel.

## **CONCLUSION**

WHEREFORE Plaintiff, Katrina Lewis, respectfully requests this Honorable Court deny Defendant's Motion in its entirety and grant such other relief as deemed necessary and appropriate in this Court's discretion.

Dated: December 5, 2025

Respectfully Submitted,

/s/ Thameka I. Hall
Carla D. Aikens (P69530)
Thameka I. Hall (P79693)
CARLA D. AIKENS, P.C.
*Attorneys for Plaintiff*
615 Griswold Street, Ste. 709
Detroit, MI 48226
carla@aikenslawfirm.com
thameka@aikenslawfirm.com

CERTIFICATION PURSUANT TO L.R. 7.1

LOCAL RULE CERTIFICATION: I, Carla D. Aikens, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for nonproportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1 (d)(3).

*/s/ Carla D. Aikens*
Carla D. Aikens

**CERTIFICATE OF SERVICE**

I hereby certify that on November 7, 2025, I caused to have electronically filed Plaintiff's Response to Defendant's Motion for Summary Judgment, Brief in Support of Motion, Exhibits and Certificate of Service with the Clerk of the Court using the E-file & Serve system, which will serve a copy of such filing via email to all attorneys of record.

*/s/ Katarzyna Nowicki*