**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KATRINA LEWIS,

Plaintiff,

v.

MAGNA POWERTRAIN OF AMERICA, INC.
*d/b/a MPT Sterling Heights*,

Defendant.
_________________________________/

Case No. 2:24-cv-13285

Hon. Brandy R. McMillion
United States District Judge

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 13) AND DISMISSING PLAINTIFF'S COMPLAINT (ECF NO. 1)**

Plaintiff Katrina Lewis ("Plaintiff" or "Lewis") brings the instant case against her former employer, Magna Powertrain of America, Inc. ("Defendant" or "MPT"), asserting claims of employment discrimination, retaliation, and wrongful termination. Lewis's Complaint (ECF No. 1) asserts various causes of action pursuant to federal and state statutes.[1] MPT now moves for summary judgment on

[1] The Court notes that Plaintiff's Complaint mislabels Count IV as Count VI and does not include a Count number for the Wrongful Termination claim. *See* ECF No. 1, PageID.9, 11. The Court will treat these claims as Counts IV and V, respectively. Accordingly, Lewis's Complaint asserts claims of racial discrimination and retaliation under 42 U.S.C. § 1981 ("§ 1981") (Counts I and III) and the Elliott-Larsen Civil Rights Act, MICH. COMP. LAWS., § 37.2101, *et seq.* ("ELCRA") (Counts II and IV); and Wrongful Termination in Violation of Public Policy under Michigan Law (Count V). *See generally* ECF No. 1.

all claims pursuant to Fed. R. Civ. P. 56(a). ECF No. 13. The Motion has been adequately briefed, so the Court will rule without a hearing. *See* ECF Nos. 13, 14, 16; E.D. Mich. LR 7.1(f)(1). For the reasons stated below, the Court **GRANTS** MPT's Motion for Summary Judgment (ECF No. 13) and **DISMISSES WITH PREJUDICE** Lewis's Complaint (ECF No. 1) in its entirety.

## I.

### A. Lewis's Employment with MPT

Plaintiff Katrina Lewis ("Lewis") is an African American woman who began working for MPT-Sterling Heights ("MPT") on June 13, 2023, as a Maintenance & Facilities Coordinator at its Sterling Heights, Michigan facility. ECF No. 13-2, PageID.129. In her role, Lewis planned and coordinated maintenance activities at the facility. *Id.* at PageID.130. Lewis worked under Supervisor, Alex Shepherd ("Shepard"). ECF No. 13-2, PageID.134.

During her new-hire orientation, MPT presented Lewis with its policy governing personal cell phone use. ECF No. 13-2, PageID.131. The orientation materials stated that employees were not permitted to use personal cell phones or other electronic devices during work time, including for texting, taking photographs or videos, or recording conversations. ECF No. 13, PageID.93. Lewis acknowledges that the cell-phone policy was shown to her during orientation but maintains that she did not believe it applied to her position because she did not work

on the production floor. ECF No. 13-2, PageID.163. According to Lewis, the policy stated that cell phones were permitted in the building and that employees could access them during breaks and lunch "only off the production floor." *Id.*

Lewis nevertheless acknowledged that she used her personal cell phone during work time. *Id.* at PageID.133. She testified that she made approximately two to three personal calls each workday and also sent and received personal text messages while working. *Id.* Lewis further testified that this occurred approximately five days per week. *Id.* Prior to December 2023, Lewis had not been formally disciplined or written up for her cell-phone use, professional conduct, or work performance. *Id.* at PageID.161. She also did not receive a performance evaluation during her approximately six months of employment. *Id.*

**B. The December 6 Cell-Phone Warning and Subsequent Workplace Conflict**

On December 6, 2023, Shepherd texted Lewis, advising her to be more careful about using her personal cell phone at work. ECF No. 13-2, PageID.134-135. Lewis responded, "Okay." *Id.* at PageID.135. Lewis maintains that this communication did not amount to a warning or formal discipline. *Id.* at PageID.161. Later that day, Lewis told Shepherd that her coworker Madelyn Borchardt ("Madelyn") also frequently used her personal cell phone during work hours. *Id.* at PageID.161. Madelyn is a white woman and the daughter of Jennifer Borchardt ("Jennifer"), who worked in Human Resources at MPT. *Id.* at PageID.147, 160, 166. According to

Lewis, Shepherd cautioned her about making accusations against Madelyn because Lewis did not want to "cross" Jennifer, whom Shepherd allegedly described as vindictive. *Id.* at PageID.136. Lewis also believed Madelyn had reported her personal cell-phone use because the two worked in the same cubicle area. *Id.* at PageID.135. During a conversation with coworker Nicole Austin ("Nicole") on December 6, Lewis referred to Madelyn as a "stupid bitch" and stated that Madelyn had "told on" her. *Id.* at PageID.137. Lewis admitted to making the remark. *Id.*

Following the December 6 warning, MPT received written statements concerning Lewis from Madelyn, Nicole, and Dyste Juncevic. ECF No. 13-3, PageID.186-192. Those statements reported, among other things, that Lewis had made negative comments about Madelyn, stated that Madelyn could not be trusted, referred to her as a "stupid bitch," and asked Nicole and Madelyn, "what the fuck are you staring at?" *Id.* Although Plaintiff admitted to calling Madelyn a "stupid bitch" during her deposition, she denies making the above-referenced comment to Nicole and Madelyn and denies having any knowledge of MPT's investigation before her termination. ECF No. 14, PageID.276; ECF No. 13-2, PageID.137, 141.

Lewis now characterizes the investigation differently. She contends that HR Managers Jennifer Borchard and Denise Lumsden conspired to conduct an investigation based on statements collected from Madelyn, Nicole, and Juncevic after the conflict involving Madelyn. ECF No. 14, PageID.286-287. Lewis further

contends that this process violated MPT's "Employment of Relatives" policy, which provides that relatives of current employees may be employed so long as they do not work in a supervisor-subordinate relationship and their hiring will not otherwise create an "actual or apparent conflict of interest." *Id.* at PageID.161. According to Lewis, MPT violated that policy because the investigation leading to her termination involved complaints made by Madelyn and was handled, at least in part, by Madelyn's mother. *Id.*

**C. Lewis's Termination**

At the completion of the investigation, HR Manager Denise Lumsden recommended that MPT terminate Lewis's employment based on two stated reasons: (1) Lewis's personal cell-phone use during work time; and (2) her unprofessional workplace conduct. ECF No. 13-3, PageID.183. Hector Castro-Gonzales, then MPT's Director of Operations, approved the recommendation. *Id.* Maintenance and Facilities Manager Aaron Harvat and Operations Manager Floyd Grayewski also agreed with the termination recommendation. *Id.* MPT terminated Lewis on December 14, 2023. *Id.*

Lewis denies having any knowledge of the internal discussions regarding her termination and disputes MPT's characterization of the basis for the decision. According to Lewis, Denise told her during the termination meeting that she was being discharged for professional misconduct relating specifically to her reference

to Madelyn as a "stupid bitch." ECF No. 13-2, PageID.141. Lewis's testimony recounting the termination meeting contained no reference to her personal cell-phone use by Lumsden or Shepard, and she affirmed that she had shared everything said by Denise, Alex, and herself during the meeting when asked. *Id.* Lewis also testified that Shepherd stated during the meeting that he had not experienced problems with her work performance and that Lewis approached him when she needed additional work. *Id.*

Lewis's Termination Checklist identified "Performance" as the category for Lewis's separation rather than "Policy Violation," but also contained handwritten references to Lewis's "time on phone" and "conduct unprofessional" next to the checked "Performance" box. *See* ECF No. 14-1, PageID.296. Denise also wrote a note on the back of the Termination Checklist, which stated:

> Katrina asked why. Said she does her job. Not a good fit as I said. She has been unprofessional. Called coworker a bitch on other occasion. On her personal phone often not working. Not completing job tasks that should be done. Asked Alex if he had any problems w/ her – He said no, not his decision. She asked him if there was anything she didn't do[;] he said no. Told her Alex wasn't in area to have seen the incidents. At one point she stopped speaking to me.

*Id.* at 297. Lewis relies on the checked "Performance" category and Shepherd's statements concerning her job performance to dispute MPT's characterization of the reasons underlying the termination. *Id.*

**D. Lewis's Allegations of Differential Treatment and Race-Related Conduct**

Lewis testified that she observed Madelyn using her personal cell phone frequently during work hours and reported that conduct to Shepherd when confronted about her own phone use. ECF No. 13-2, PageID.160-161. Lewis also maintains that she personally did not observe Madelyn or other coworkers being disciplined for similar conduct. *Id.* MPT claims that Madelyn and Lewis performed different jobs and reported to different supervisors; Madelyn's supervisor had not reported significant personal cell-phone use; Madelyn had not previously received a warning concerning phone use; and Madelyn had not engaged in the additional workplace conduct attributed to Lewis. ECF No. 13-3, PageID.182.

Lewis also points to several workplace incidents that she contends bear on her race-discrimination claims. Lewis testified that her department had only two African American employees, including herself. ECF No. 13-2, PageID.160. She further testified that, during a conversation about food, a coworker identified only as "Julie" mentioned "ham hocks or beans or greens or chicken or something" and asked Lewis: "Don't you people eat all of that?" *Id.* at PageID.143. When Lewis asked who Julie was referring to, she responded, "you, black people." *Id.* Lewis said that she ignored Julie's comment, "went on about [her] business," and "laughed it off" at the time. *Id.* Lewis also testified that her coworker, Kurt Blasius, said he typically judges people based on their character but also considered himself prejudiced during

a conversation about "people in general." *Id.* at PageID.139, 143. Lewis did not report either Julie's, Kurt's, or any other comments by her co-workers to MPT. *Id.* at PageID.144. She testified that, apart from those two comments, no one else at MPT made a racist comment or slur to her. *Id.* at PageID.143.

When asked at deposition to identify the conduct supporting her race-discrimination claim, Lewis also described other incidents. She testified that Jennifer once stated during a meeting of approximately five or six employees that "this is not a fashion show" and that employees were supposed to dress business casual. ECF No. 13-2, PageID.143. Lewis believed the comment was directed toward her because she was dressed well while other employees wore T-shirts and jeans. *Id.* She testified to a separate instance on the day of her termination when Julie and Lewis were getting ready for the company's holiday party, and Julie asked Lewis if the fur coat she was wearing was fake, to which Lewis replied: "No, it's a hundred percent rabbit." *Id.* at PageID.144. Lewis also testified that Jennifer or another employee twice failed to introduce her to a new hire while introducing other employees in the area, and that Lewis once overheard another employee tell Nicole, "Don't you hate people that think that they're all that and they're not," which Lewis believed referred to her. *Id.* at PageID.146-147. Lewis testified that she did not report any of those incidents to MPT. *Id.*

Lewis also testified that MPT did not provide her with resources explaining procedures for reporting discrimination, harassment, or retaliation. ECF No. 13-2, PageID.163. The Open-Door Policy contained in MPT's Employee Handbook likewise did not expressly address anti-discrimination, anti-harassment, or anti-retaliation reporting. *Id.* at PageID.279. Nevertheless, Lewis acknowledged at deposition that she never complained to MPT of discrimination or harassment during her employment. ECF No. 13, PageID.96.

As a result of her termination, Lewis brought the instant civil lawsuit against MPT. She alleges claims for Racial Discrimination in violation of 42 U.S.C. § 1981 (Count I), Discrimination on the Basis of Race in violation of the Elliott-Larsen Civil Rights Act, MICH. COMP. LAWS., § 37.2101, *et seq.* ("ELCRA") (Counts II), Retaliation in violation of 42 U.S.C. § 1981 (Count III), Retaliation in violation of ELCRA (Count IV), and Wrongful Termination in violation of Public Policy (Count V). *See* ECF No. 1. MPT has moved for summary judgment on all Counts. ECF No. 13.

**II.**

A motion for summary judgment under Federal Rule of Civil Procedure 56 shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where the movant satisfies its initial burden, the nonmoving party must

identify specific record evidence showing a genuine dispute of material fact, as the Court determines the existence of such a dispute by evaluating the record as a whole. *Green Genie, Inc. v. City of Detroit, Mich.*, 63 F.4th 521, 526 (6th Cir. 2023) ("[T]he nonmoving party must present 'significant probative evidence' revealing that there is 'more than some metaphysical doubt as to the material facts necessitating a trial[.]'") (citation modified). "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts[,]" otherwise, the court need not accept a version of facts that the record disproves. *Scott v. Harris*, 550 U.S. 372, 380-381 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"The non-moving party may not rely on [her] pleadings alone, but must demonstrate the existence of a genuine issue for trial by pointing to 'specific facts' that create such an issue." *Hamilton v. Myers*, 281 F.3d 520, 525 (6th Cir. 2002) (citation omitted). Courts will find that a genuine dispute of material fact exists where the record reveals "disputes over facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A mere scintilla of evidence" is insufficient to forestall summary judgment." *Babcock & Wilcox Co. v. Cormetech, Inc.*, 848 F.3d 754, 758 (6th Cir.

2017). However, the court is under no obligation to parse a summary judgment record to search out facts or evidence not brought to its attention. *In re Morris*, 260 F.3d 654 (6th Cir. 2001).

> It is the obligation of the non-moving party . . . not the Court, to scour the record in search of the evidence that would defeat a motion for summary judgment: Rule 56 'requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'

*Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). Moreover, conclusory assertions, supported only by the plaintiff's own opinions, do not create a genuine issue of material fact that can withstand a motion for summary judgment. *Arendale v. City of Memphis*, 519 F.3d 587, 608 (6th Cir. 2008); *see also Johari v. Big Easy Rest., Inc.*, 78 F. App'x 546, 548 (6th Cir. 2003).

## III.

MPT moves for summary judgment on all of Lewis's claims. *See generally* ECF No. 13. Although the claims arise under multiple statutes, courts generally analyze them under the same substantive legal standards, where applicable. Accordingly, the Court will address Lewis's claims by theory of liability rather than by statutory label or count number.

### A. Discrimination and Retaliation

Before moving to the merits of MPT's motion, the Court must consider whether Lewis has presented any direct evidence of discrimination to prove her

claims to apply the correct legal framework. "[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Sampson v. Flex N Gate Nine Mile, LLC*, No. 23-1717, 2024 WL 1887003, at *3 (6th Cir. Apr. 30, 2024) (citation modified). Absent direct evidence of discrimination, the *McDonnell Douglas* burden-shifting framework applies. *Lyons v. Michigan Dep't of Corr.*, 812 F. App'x 305, 308 (6th Cir. 2020). MPT asserts that Lewis has no direct evidence of discrimination and argues that claims of "disparate treatment must come from decisionmakers" and relate "to the decisional process itself" to constitute direct evidence. ECF No. 13, PageID.101-102 (quoting *Geiger v. Tower Auto.*, 579 F.3d 614, 620-621). Thus, Defendant contends that the Court must evaluate her claims under the *McDonnell-Douglas* framework. *Id.*

While Lewis's brief is somewhat unclear on the issue, the Court does not interpret her response as claiming that the record contains direct evidence of discrimination. *Contrast* ECF No. 14, PageID.273, *with id.* at PageID.281 *and id.* at PageID.282-283. Rather, she primarily proceeds under the circumstantial-evidence framework, while arguing that the framework need not apply in every instance because the Court's ultimate responsibility in employment discrimination cases at the summary judgment stage is to determine whether the evidence, considered as a whole, permits an inference of discriminatory intent. ECF No. 14,

PageID282-284.[2]

The Sixth Circuit and this Court routinely apply the *McDonnell Douglas* framework when evaluating employment discrimination and retaliation claims that rely on indirect evidence.[3] Lewis could avoid that framework by presenting direct evidence of discrimination, and she is correct that the ultimate inquiry at summary judgment remains whether the record contains sufficient evidence from which a reasonable jury could find in her favor. However, neither principle relieves Lewis of her burden to produce evidence from which a reasonable jury could find that MPT discriminated against her because of race. As explained below, Lewis has not carried that burden.

Having reviewed the record, the Court finds no direct evidence of

---

[2] Lewis cites *Hittle v. Stockton*, No. 24-427, 601 US__, at (Mar. 10, 2025) (Thomas, J., dissenting from denial of cert.), contending that courts can use multiple procedural avenues to evaluate employment discrimination claims at summary judgment, and that the *McDonnell Douglas* framework is simply one of those avenues, though not necessarily the most fitting in every employment discrimination case. *Id.* at PageID.282. However, Justice Thomas's dissent from the denial of certiorari in *Hittle*, is not binding precedent, and it does not displace controlling Sixth Circuit authority governing this Court's analysis and use of the *McDonnell Douglas* framework.

[3] *See e.g.*, *Bloomer v. Word Network Operating Company, Inc.*, 785 F.Supp.3d 251 (E.D. Mich., 2025) (applying the *McDonnell Douglas* framework to employment discrimination claims brought under § 1981); *Klumpp v. Uniloy, Inc.*, 2024 WL 6901279 (E.D. Mich., 2024) (applying the *McDonnell Douglas* framework to employment discrimination claims brought under ELCRA); *Williams v. Crystal Flash*, No. 2:24-CV-11640, 2024 WL 3541496 (E.D. Mich. July 25, 2024), *motion for relief from judgment denied sub nom. Williams v. Crystal Flash Co.*, No. 24-CV-11640, 2024 WL 5440060 (E.D. Mich. Nov. 7, 2024), *appeal dismissed,* No. 25-1186, 2025 WL 1541716 (6th Cir. Apr. 9, 2025), and *reconsideration denied,* No. 2:24-CV-11640, 2025 WL 2463149 (E.D. Mich. Aug. 26, 2025), *appeal dismissed,* No. 25-1819, 2025 WL 3772146 (6th Cir. Nov. 3, 2025) (applying the *McDonnell Douglas* framework to employment discrimination claims brought under Title VII).

discrimination here. Lewis has not provided evidence that anyone involved in the termination decision knew of the alleged statements, nor has she shown that any decision-maker made discriminatory statements towards her or others. Accordingly, the Court will analyze the claim under the *McDonnell Douglas* Framework.

***1. McDonnell Douglas Burden-Shifting Framework***

The first step of the *McDonnell Douglas* framework requires the plaintiff to establish a *prima facie* case of discrimination or retaliation. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014); *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000). If the plaintiff successfully establishes her *prima facie* case, the burden of production then shifts to the employer to offer a "legitimate, non-discriminatory or retaliatory reason" for the adverse employment action. *Johnson*, 215 F.3d at 573. The burden then shifts back to the plaintiff to show that the employer's proffered reason is pretextual. *Laster*, 746 F.3d at 730. While the burden of production shifts between the parties, the burden of persuasion remains with the plaintiff throughout the process. *Id.* (citing *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007)).

A plaintiff may establish pretext by showing that the employer's proffered reason: (1) had no basis in fact, (2) did not actually motivate the employer's actions, or (3) was insufficient to motivate the employer's action. *See Miles v. South Cen. Hum. Res. Agency, Inc.*, 946 F.3d 883, 888 (6th Cir. 2020). Although plaintiffs are

not confined to these three categories, they must still articulate how the evidence they rely upon supports a reasonable inference that the employer's stated reason was not the true reason for the adverse action. *Id*. The ultimate inquiry remains whether the employer acted for the stated reason or if that reason was pretextual. *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012).

The Court must ensure that the burden-shifting framework does not obscure the dispositive question at summary judgment: "whether the record contains a genuine dispute of material fact requiring resolution by a jury." *See Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 776 (6th Cir. 2016) ("VHS Detroit") (citing *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 813 (6th Cir. 2011); *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000).

***2. Retaliation (Under § 1981 and ELCRA)***

Lewis alleges that MPT retaliated against her in violation of § 1981 and ELCRA by terminating her employment after she complained about the selective application of the cell phone policy to her and a non-African American employee, Madelyn Borchardt. ECF No. 1, PageID.3, 7; ECF No.14, PageID.280. MPT now moves for summary judgment on Lewis's race-based retaliation claim, arguing that Lewis did not engage in any protected activity, cannot establish a causal link between any alleged protected activity and her termination, and cannot rebut MPT's legitimate, nonretaliatory reason for her termination: Lewis's repeated violations of

MPT's cell phone policy and unprofessional conduct. ECF No. 13, PageID.104-109.

To establish a *prima facie* case of retaliation under ELCRA and § 1981, the plaintiff must show that: (1) she engaged in a protected activity; (2) her employer knew that she engaged in that protected activity; (3) her employer subsequently took an adverse employment action against her; and (4) the adverse action was causally connected to the protected activity. *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 775 (6th Cir. 2018).

**i. Lewis Did Not Engage in Any Protected Activity**

Defendant first contends that Lewis cannot show she engaged in any protected activity because she admitted that she never complained about discrimination or harassment while employed at MPT. ECF No. 13, PageID.107-108. The Court agrees with that conclusion based on the record as it stands. A complaint must "put defendants on notice that" the employee is "opposing racial discrimination. *Arredondo v. Beer Barrel Inc.*, 645 F. Supp. 3d 739, 754 (N.D. Ohio 2022). While Lewis does not dispute that her December 6 complaint contained no allegations of racially discriminatory conduct, she claims MPT never informed her of its discrimination and harassment reporting procedures and argues that her complaint nonetheless amounted to protected activity. ECF No. 13-2, PageID.164, ECF No. 14, PageID.276, 288. During her deposition, Lewis also testified that the sole reason

for her retaliation claims is her belief that her termination was retaliation for disrespecting Madelyn Bordchardt when she referred to her as a "stupid bitch," because she believed that Madelyn told on her for using her phone during work hours. ECF No. 13-2, PageID.147.

Lewis's court filings identified Madelyn Bordchardt as being white and characterized MPT's selective application of the company's cell phone policy as racially motivated; that later characterization does not, however, retroactively transform the nature or contents of her initial complaint to her employer. Her testimony establishes that she complained about Madelyn also using her personal cellphone during work hours without facing discipline, not that she expressed her belief that MPT ignored Madelyn's personal phone use because she is white or reprimanded Lewis because she is African American. *Id.* Nor does Lewis's lack of knowledge regarding MPT's reporting procedures change the Court's analysis. Lewis admitted that her December 6 complaint contained no reference to unlawful discriminatory or harassing conduct in the workplace and that she never made any other such complaints during her employment. *Id.* Moreover, name-calling based on frustration toward other co-workers does not constitute a protected activity under the law. *See Mumm v. Charter Twp. of Superior*, 727 F. App'x 110, 112-113 (6th Cir. 2018) (a complaint "need not be lodged with absolute formality, clarity, or precision," but it "must allege unlawful discrimination ***rather than general***

***unfairness***," such that the employer could "reasonably underst[and]" that the employee was opposing unlawful discrimination, to constitute a protected activity) (citation modified) (emphasis added).

As the Court will explain, Defendant is further entitled to summary judgment on Lewis's retaliation claim because Lewis has not shown a causal link between the protected activity and her termination or demonstrated that MPT's non-discriminatory reason was pretextual.

**ii. Lewis Failed to Show Causal Connection**

Defendant also argues that Lewis has not provided evidence showing that any alleged protected activity was the but-for cause of Plaintiff's termination. ECF No. 13, PageID.108. Plaintiff counters that the temporal proximity between her December 6 complaint and her December 14 termination, coupled with MPT's alleged selective enforcement of its cell phone policy and the intervening investigation, permits an inference that her complaint caused her termination. ECF No. 24, PageID.290. She further contends that Jennifer Borchardt and Denise Lumsden retaliated against her by developing the investigation that ultimately resulted in her discharge. *Id.* Lewis is correct that the temporal proximity between a protected activity and an adverse employment action can provide highly probative evidence of a causal connection, particularly where other circumstances create an inference of causation. *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 524 (6th

Cir. 2008). But temporal proximity cannot establish causation where no protected activity existed to begin with. Thus, because Lewis's December 6 conversation with Shepherd did not constitute protected activity for the reasons explained above, the proximity between that conversation and her termination does not establish the requisite causal connection.

Even assuming, however, that Lewis's complaint constituted protected activity, her causation theory suffers from an additional defect. A plaintiff cannot establish retaliation without evidence that the employer knew of the protected activity when it took the adverse action. *Johnson v. Farmington Pub. Schools*, 728 F. Supp. 3d 723, 752 (E.D. Mich. 2024), *motion for relief from judgment denied*, No. 2:21-CV-12562-TGB-APP, 2024 WL 4250013 (E.D. Mich. Aug. 14, 2024), *appeal dismissed*, No. 24-1779, 2024 WL 5135858 (6th Cir. Dec. 3, 2024). Lewis testified that she complained to Shepherd about Madelyn's cell phone use, but she identifies no evidence that Shepard communicated that complaint to Jennifer Borchardt or Denise Lumsden, whom Lewis accuses of retaliating against her by developing the investigation that preceded her termination. Nor does Lewis identify other evidence showing that Jennifer or Denise knew Lewis had complained of allegedly disparate treatment before the investigation or termination.[4] Temporal proximity cannot

[4] Lewis similarly fails to show any knowledge of the alleged complaint by Hector Castro-Gonzales, Aaron Harvat, or Floyd Grayewski – all of which weighed in on her termination.

supply that missing knowledge. The closeness in time between two events does not permit an inference of retaliation where there is no evidence that the alleged retaliators knew the first event occurred.

Lewis's own testimony further undermines the causal connection she now advances. When asked why she believed MPT retaliated against her, Lewis testified that she believed she was terminated because she referred to Madelyn as a "stupid bitch." ECF No. 13-2, PageID.147. To the extent Lewis herself attributes her termination to that remark, her testimony supplies a causal explanation for her termination, not a causal connection between her termination and activity protected by § 1981 or the ELCRA. And the chronology upon which Lewis relies does not alter that conclusion: the intervening complaints and investigation she identifies concerned, among other things, Lewis's conduct toward Madelyn, including the "stupid bitch" remark. ECF No. 13-3, PageID.181-183. Thus, even construing the evidence in Lewis's favor, the timing of those events does not permit a reasonable jury to infer that MPT terminated Lewis because she engaged in protected activity.

Accordingly, Lewis has not produced evidence from which a reasonable jury could find the requisite causal connection between protected activity and her termination. Further, even if Lewis could establish a *prima facie* case of retaliation, her claim nevertheless fails because she has not produced evidence from which a reasonable jury could conclude that MPT's proffered reasons for her termination,

her cell-phone use and unprofessional conduct, were pretextual.

**iii. Lewis Failed to Establish Pretext**

Once an employer articulates a legitimate, non-retaliatory reason for an adverse employment action, the burden shifts back to the plaintiff to show that the proffered reason was a pretext for retaliation. *Laster*, 746 F.3d at 730. A plaintiff may demonstrate pretext by showing that the employer's stated reason: (1) had no basis in fact; (2) did not actually motivate the adverse action; or (3) was insufficient to motivate the adverse action. *Miles*, 946 F.3d at 888. These categories are not rigid requirements, but rather a "convenient way of marshaling evidence" toward the ultimate inquiry: whether the employer's stated reason was the true reason for the challenged action. *Tingle*, 692 F.3d at 530.

MPT argues that Lewis cannot rebut the proffered reason as pretextual because the record offers clear support for the adverse action. ECF No. 13, PageID.105. According to MPT, Lewis was informed of the company's cell phone policy during her orientation and violated the policy by calling and texting on her personal cell phone every day during work hours. *Id.* MPT further contends that Lewis was warned about her cell phone use and responded by lashing out at her co-workers; and she admits to calling Madelyn a "stupid bitch" because she believed that Madelyn informed her supervisor of her cell phone use. *Id.* MPT argues that Plaintiff cannot point to any evidence that her conduct did not motivate the

recommendation for her termination or the termination itself. The Court agrees. *See*, *e.g.*, *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001) (disagreement with employer's honest business judgment is insufficient evidence of pretext in the face of the substantial evidence that employer had a reasonable basis to be dissatisfied); *see also Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 588 (6th Cir. 2002) ("[t]erminating an employee because [she] fails to perform satisfactorily is a legitimate and nondiscriminatory reason to end [her] employment.").

Lewis does not meaningfully dispute the reasons articulated for her termination. Instead, her pretext argument rests on three theories: (1) that the cell phone policy was selectively enforced; (2) that the timing and escalation of discipline suggest retaliatory motive; (3) that MPT's justifications for termination shifted over time. ECF No. 14, PageID.286-290. None of these arguments creates a genuine dispute as to a material fact.

MPT has consistently maintained that Lewis was terminated for performance issues related to her cell-phone use and unprofessional conduct towards her coworkers. ECF No. 13-3, PageID.181-183; ECF No. 14-1, PageID.296-297. Plaintiff's attempts to distinguish that conduct from her performance of the core responsibilities of her role amount to a distinction without a difference; and the record provides support for MPT's decision to discharge her. Lewis cannot dispute

that the unprofessional behavior reported by her coworkers actually occurred or that she used her cell phone regularly. She has not provided evidence that any of her co-workers were warned about or disciplined by their supervisors for improper cell phone use or other unprofessional conduct. Lewis merely asserts that her complaint formed the retaliatory motive for her termination and that the investigation documenting her performance issues resulted from MPT management and HR officials conspiring to create cause for her termination. As such, the Court interprets Lewis's contention as an attempt to deflect from indisputable conduct, rather than a legitimate basis to infer pretext. The record makes clear that Lewis failed to take accountability for her cell-phone use and instead resorted to finger-pointing and name-calling.

Moreover, Lewis's testimony admitting that she referred to her co-worker as a "stupid bitch," alone supports Defendant's proffered reason. Such unprofessional conduct is considered reasonable grounds for termination in this Circuit. *See Algie v. N. Kentucky Univ.*, 456 F. App'x 514, 517 (6th Cir. 2012) ("A critical attitude toward co-workers and disruptive behavior in the workplace may constitute a legitimate reason for discharge."). The record contains an undisputed factual basis for MPT's stated reasons for Lewis's termination. Thus, Lewis cannot establish pretext under the first method identified in *Miles*, and her remaining arguments concern whether MPT's stated reasons actually motivated her termination or were

sufficient to do so.

Lewis's reliance on MPT's alleged selective enforcement of its policies similarly fails to establish pretext. Lewis testified that she observed Madelyn and other employees using their personal cell phones during work hours and that she never personally observed them being disciplined for doing so. ECF No. 13-2, PageID.135-136. But those observations do not establish that MPT knowingly tolerated comparable misconduct by other MPT employees while disciplining Lewis. Lewis identifies no disciplinary records showing that other employees were not disciplined, testimony from her co-workers or their supervisors about their cell-phone use, evidence of what their supervisors observed, or evidence that the relevant decision-makers knew her co-workers were violating the policy and deliberately declined to enforce it against her. On the contrary, Denise Lumsden testified that Madelyn's supervisor had not reported significant personal cell-phone use and that Madelyn had not received the warning Lewis received. ECF No. 13-3, PageID.181-183. Even crediting Lewis's testimony concerning what she personally observed, she has failed to provide evidence creating a reasonable inference that MPT disciplined plaintiff while ignoring comparable conduct by other employees, much less that it did so in retaliation for an alleged protected activity.

Lewis's timing argument is also insufficient for reasons the court has already explained above. Although Lewis emphasizes that she was disciplined only after

engaging in protected activity, the record shows she did not engage in any protected activity and that her employer acted swiftly after receiving complaints from multiple co-workers about her lack of professionalism. *Id.*

Finally, the record likewise belies Lewis's contention that MPT offered shifting or inconsistent explanations for her termination. Shifting justifications may, in some circumstances, permit an inference of pretext, but only where an employer offers materially different or contradictory reasons at different stages of the decision-making process. *See Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1167 (6th Cir. 1996). That did not occur here. From the outset, MPT identified the same events as the basis for Lewis's termination: performance and improper phone use, as indicated by the handwritten text on her Termination Checklist. ECF No. 14-1, PageID.296. Lewis relies principally on the fact that MPT checked "Performance," rather than "Policy Violation," on her Termination Checklist. ECF No. 14, PageID.286; ECF No. 14-1, PageID.296-297. But the same document expressly identifies Lewis's "time on phone" and "conduct unprofessional" as reasons for her termination. *Id.*; *see also* ECF No. 16, PageID.334. MPT did not subsequently abandon those reasons in favor of a different explanation; it consistently cites Lewis's excessive cell-phone use and unprofessional conduct, including her reference to a coworker as a "stupid bitch," as its proffered reasons. ECF No. 13-3, PageID.180-192; ECF No. 14-1, PageID.296-297; ECF No. 16, PageID.334.

That Lewis's supervisor did not identify deficiencies in her core job responsibilities does not contradict MPT's stated reasons for termination. Indeed, MPT acknowledged this on the termination paperwork and included Shepherd's clarification that the decision was not his because it arose from Lewis's workplace conduct rather than deficiencies in the work he supervised. ECF No. 14-1, PageID.296-297. Plaintiff cannot manufacture an inconsistency by isolating the label assigned to a checkbox while disregarding the additional reasons expressly written on the same document. Lewis has not produced evidence from which a reasonable jury could conclude that MPT's stated reason for terminating her employment was false, insufficient to motivate the adverse action, or that retaliation was the real motive. Because Lewis fails to rebut MPT's legitimate, nonretaliatory reason with sufficient evidence to create a genuine dispute of material fact, summary judgment in favor of MPT on her retaliation claims is warranted.

### ***3. Disparate Treatment (Under § 1981 and ELCRA)***

Under *McDonnell Douglas*, Lewis must first make out a *prima facie* case of discrimination based on disparate treatment, which requires her to show that: (1) she is a member of a protected class; (2) she was discharged; (3) she was qualified for the position; and (4) she was replaced by someone outside of the protected class. *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 394 (6th Cir. 2008) (citing *Minadeo v. ICI Paints*, 398 F.3d 751, 764 (6th Cir. 2005).

The parties do not dispute that Lewis satisfied the first three prongs. MPT instead argues that Lewis cannot satisfy the fourth because she was not replaced after her termination and has not identified a similarly situated employee outside her protected class who was treated more favorably. ECF No. 13, PageID.105; ECF No. 16, PageID.325. Lewis does not dispute that MPT did not replace her; instead, she points principally to her white coworker, Madelyn Borchardt. Although Madelyn had a different role, supervisor, and no reports of professional misconduct from her co-workers or supervisor, Lewis nonetheless argues that she and Madelyn are similarly situated because they both used their personal phones during work hours. ECF No. 14, PageID.286-287. More broadly, Lewis also argues that the circumstances surrounding her termination permit an inference of race discrimination even absent a similarly situated comparator. *Id.*[5]

***i. Lewis and Madelyn are not similarly situated***

To establish disparate treatment through comparator evidence, an "exact

[5] Plaintiff relies on *Blair v. Henry Filters, Inc.*, 505 F.3d 517 (6th Cir. 2017), an age discrimination case, which finds that there are multiple ways in which a plaintiff can establish that the employer gave a job to a younger employee. *Id.* at 529. This, however, does not eliminate Plaintiff's requirement to identify a similarly situated comparator in her race discrimination claim. She also relies on *Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741 (6th Cir. 2012), which is a race discrimination case; but that case does not abrogate Plaintiff's need to identify comparators. It simply holds that for the comparators identified; there is no requirement to demonstrate an exact correlation between plaintiff and the comparators. *See Bobo*, 665 F.3d at 751 ("Bobo was not required to demonstrate an exact correlation between himself and others similarly situated; rather, he had to show only that he and his proposed comparators were similar in all relevant respects… and that he and his proposed comparators engaged in acts of comparable seriousness.") (internal citations omitted). Nonetheless, the Court will consider both Lewis's proposed comparator and the remaining circumstances she identifies as evidence of discriminatory intent.

correlation with the employee receiving more favorable treatment" is not required; rather, Lewis bears the burden of proving she and the purported comparator were "similar in 'all of the *relevant* aspects.'" *Redlin v. Grosse Pointe Pub. Sch. System*, 921 F.3d 599, 610 (6th Cir. 2019) (citation modified). Where an employer relies upon employee misconduct, the plaintiff and proposed comparator must have engaged in conduct of comparable seriousness, taking into account relevant differentiating or mitigating circumstances. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998); *see also Clayton v. Meijer, Inc.*, 281 F.3d 605, 611-612 (6th Cir. 2002).

Lewis has not made that showing. Lewis and Madelyn held different positions and reported to different supervisors. ECF No. 13-3, PageID.182. More importantly, the record does not show that Madelyn engaged in misconduct comparable to the conduct for which MPT terminated Lewis. *Id.* Lewis testified that she observed Madelyn using her personal cell phone during work hours and reported that observation to Shepherd. ECF No. 13-2, PageID.135-136. But Denise Lumsden's declaration provided that Madelyn's supervisor had not reported significant personal cell-phone use, and Madelyn had not received a warning from her supervisor regarding personal cell-phone use. ECF No. 13-3, PageID.181-183. Even viewing such observations in the light most favorable to Lewis, she has not provided evidence of other unprofessional conduct by Madelyn that is comparable

to that which Lewis admits to. These distinctions remain undisputed for Lewis's disparate treatment claim, and Lewis's response does little to defeat them.

Although the relevant section of her brief is captioned "Plaintiff Has Shown Similarly Situated Comparators Outside of Her Protected Class," Lewis acknowledges MPT's contention that she and Madelyn held different jobs, reported to different supervisors, and differed with respect to both prior warning and subsequent misconduct. ECF No. 14, PageID.286-287. She does not explain why those differences are immaterial to the employment decision at issue. Instead, Lewis contends that Madelyn received favorable treatment because her mother, Jennifer Borchardt, worked in Human Resources; invokes MPT's Employment of Relatives Policy to suggest nepotism played a role in her firing; and relies on Shepherd's alleged warning that Lewis should be careful about "cross[ing]" Jennifer because she was vindictive. *Id.*

While the evidence Lewis references suggests that Madelyn may have benefited from her familial relationship with Jennifer, it does not establish that Madelyn and Lewis were similarly situated. Nor does it eliminate the differences in their respective conduct. The Sixth Circuit has expressly rejected the notion that a plaintiff may establish pretext by pointing to isolated acts by different coworkers while ignoring the cumulative seriousness of her own misconduct. *See VHS Detroit*, 814 F.3d at 777. Selective-enforcement arguments require a showing that the

comparator engaged in conduct of "comparable seriousness." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 n.5 (6th Cir. 1992); *see also Warfield v. Lebanon Corr. Inst.*, 181 F.3d 723, 731 (6th Cir. 1999). Here, Lewis was not terminated for cell-phone use alone. MPT also relied upon her workplace conduct following the December 6 warning. Lewis did not establish that Madelyn engaged in comparably serious conduct and nevertheless received more favorable treatment.

Indeed, Lewis ultimately abandons any developed comparator analysis. After asserting that Madelyn was never disciplined for personal cell-phone use, and that the HR Managers collected reports of her misconduct as part of a conspiracy "to develop an investigation," Plaintiff's brief cuts off mid-sentence: "Yet, as Defendant argues, Madelyn was never disciplined for personal cell phone usage. Defendant's cell phone policy does not provide. . . [.]" ECF No. 14, PageID.288. The next sentence states Plaintiff's conclusion that the evidence "taken together" permits an inference of discrimination "without needing to identify a similarly situated person," directly contradicting the section heading's stated premise. *Id.* at PageID.286. The Court will not speculate as to what Plaintiff intended to convey. On the argument as presented, Lewis failed to show that Madelyn was similarly situated in all relevant respects.

***ii. Lewis has not otherwise established an inference of race discrimination***

The Court acknowledges that Lewis argues her failure to identify a similarly situated comparator does not necessarily end the *prima facie* inquiry; and that she may still satisfy the fourth element by presenting other evidence that, viewed in her favor, permits a reasonable inference that MPT punished or terminated her because of race. *See* ECF No. 14, PageID.284-285 (citing *Blair*, 505 F.3d at 529; *Bobo*, 665 F.3d 741 ). She has not done so, however. Lewis relies on various comments made during her employment, but only one explicitly references race. She testified that, during a conversation about food, a coworker named Julie asked whether "you people" ate certain foods and clarified that she meant "you, black people." ECF No. 13-2, PageID.143. Lewis also testified that Kurt Blasius told her that he considered himself prejudiced during a conversation about "people in general," without mentioning whether Kurt said he was prejudiced towards African American people, specifically, or another protected group. ECF No. 14, PageID.279. The Court also notes that Lewis claimed additional instances of racism occurred, including comments relating to her attire and how certain employees carry themselves in the workplace; but she has not pointed to any record evidence identifying how those comments were racial in nature. ECF No. 13-2, PageID.143-147. Nor does Lewis make any argument establishing how her race played a factor in Jennifer Borchardt

failing to introduce Lewis to new hires while bringing them to greet current employees on the floor she worked on.

Even when viewing these facts in Lewis's favor, these comments show that race entered only one workplace conversation during the six months she worked at MPT. But neither Julie nor Blasius participated in Lewis's termination; Lewis never reported their comments to MPT, and she provides no evidence that Shepard, or anyone involved in the termination decision, knew of the comments. While remarks by nondecision makers are not necessarily irrelevant to discrimination claims based on indirect evidence, their probative value depends upon some evidentiary connection between the asserted racial bias and the challenged employment action. *Anderson v. Otis Elevator Co.*, 923 F. Supp. 2d 1032, 1084 (E.D. Mich. 2013) ("Evidence of discriminatory motives must . . . have some relationship with the employment decision in question; inappropriate but isolated comments that amount to no more than stray remarks in the workplace will not do.") (citation modified). Lewis does not identify any evidence that Julie or Blasius influenced the termination decision, that anyone who did influence the decision made comments creating an inference of racial animus, or that the investigation and decision-making process reflected the racial animus Lewis attributes to their comments.

The remaining circumstances Lewis identified do not supply that missing connection either. *See Nair v. Columbus State Community College*, No. 2:02-CV-

595, 2008 WL 483333, at *16 (S.D. Ohio Feb. 19, 2008) ("Courts must also look to the substance of the comments, and their relationship to one another. . . . Isolated and ambiguous comments . . . usually do not support a finding of pretext."). Lewis emphasizes Madelyn's familial relationship with Jennifer, MPT's Employment of Relatives Policy; Shepherd's alleged statement that Jennifer was vindictive; the investigation following Lewis's conflict with Madelyn; the absence of progressive discipline; and Lewis's belief that MPT selectively enforced its cell-phone policy. ECF No. 14, PageID.278-279, 286-287. But even accepting Lewis's characterization of these circumstances, they may suggest favoritism toward Madelyn, unsavory workplace politics, or general dissatisfaction with the manner in which MPT handled Lewis's termination. They bear no relation to the alleged racially discriminatory remarks that Lewis relies on, and as such, cannot support an inference that the differential treatment occurred because of Lewis's race. Without evidence establishing such a connection, a reasonable jury could not infer that MPT terminated Lewis because of her race.

Accordingly, Lewis has not established the fourth element of her *prima facie* case of race discrimination under § 1981 or the ELCRA.

***iii. Lewis Failed to Establish Pretext***

Even assuming Lewis could establish a *prima facie* case, her disparate-treatment claims fail at the pretext stage. As discussed above, MPT has articulated

legitimate reasons for Lewis's termination: her personal cell-phone use during work hours and her unprofessional workplace conduct. Lewis must therefore produce evidence from which a reasonable jury could conclude that those reasons had no factual basis, did not motivate her termination, or were insufficient to do so. *See Miles*, 946 F.3d at 888.

Lewis's race-discrimination pretext arguments overlap with those addressed above. Once more, she does not dispute that she regularly used her personal cell phone during work hours or that she referred to Madelyn as a "stupid bitch." Rather, she contends that MPT selectively enforced its cell-phone policy, improperly favored Madelyn because of her relationship with Jennifer, failed to employ progressive discipline, and offered inconsistent explanations for Lewis's termination. ECF No. 14, PageID.285-287. But none of those circumstances permit a reasonable inference that MPT's stated reasons were a pretext for race discrimination.

As explained above, Lewis has not produced evidence that MPT knowingly tolerated comparable misconduct by Madelyn or any other white employee. And even if the record permitted an inference that Madelyn received preferential treatment because her mother worked in Human Resources, without some additional connection to race, preferential treatment arising from a familial relationship is not evidence of racial discrimination. Likewise, the contemporaneous termination

documents expressly identify Lewis's phone use and unprofessional conduct, notwithstanding Plaintiff's reliance on the "Performance" checkbox. ECF No. 14-1, PageID.296-297.

Lewis also emphasizes that MPT did not exhaust the steps identified in its Progressive Discipline Policy before terminating her employment. ECF No. 14, PageID.287. But Lewis identifies no provision requiring MPT to progress through each disciplinary step before terminating an at-will employee, and the mere fact that MPT did not employ every available disciplinary measure does not, without evidence that it departed from a mandatory procedure or applied that procedure differently because of her race, permit a reasonable inference of discriminatory pretext.

Plaintiff cannot convert evidence of alleged nepotism, procedural irregularities, or workplace unfairness into evidence of racial discrimination merely by characterizing MPT's stated reasons as pretextual. Accordingly, even assuming Lewis could establish a *prima facie* case, she has not produced evidence from which a reasonable jury could conclude that MPT's stated reasons for her termination were a pretext for unlawful race discrimination. MPT is therefore entitled to summary judgment on Lewis's disparate treatment claims under § 1981 and the ELCRA.

### B. Wrongful Discharge in Violation of Public Policy

Finally, under Count V, Lewis alleges her wrongful discharge resulted, in part,

from her assertion of protected rights when she protested MPT's alleged selective enforcement of the cell phone policy due to nepotism. ECF No. 1, PageID.11. MPT seeks summary judgment on this count, arguing that Lewis's public-policy claim fails because the conduct on which she relies is already addressed by § 1981 and ELCRA, both of which prohibit retaliation and provide statutory remedies for the same alleged discharge. ECF No. 13, PageID.109.

Michigan generally recognizes employment as terminable at-will, subject to a narrow public-policy exception where an employee is discharged in violation of a "clearly mandated public policy." *Suchodolski v. Mich. Consol. Gas Co.*, 412 Mich. 692, 695 (1982). The Michigan Supreme Court has identified three circumstances supporting such a claim where an employee is discharged for: (1) exercising a right conferred by a well-established legislative enactment; (2) refusing to violate the law; or (3) reporting or opposing conduct that violates the law or a clearly articulated public policy. *See Kellar v. Yunion, Inc.*, 157 F.4th 855, 882 (6th Cir. 2025) (citation omitted); *accord McNeil v. Charlevoix Cnty.*, 772 N.W.2d 18, 24 (Mich. 2009). In determining what constitutes public policy, courts must look to "objective legal sources" rather than their own views of what public policy ought to be. *Kimmelman*, 278 Mich. App. at 573 (quoting *Terrien v. Zwit*, 467 Mich. 56, 66 (2002)). Thus, the recognized public-policy exceptions generally involve an employee "exercising a right guaranteed by law, executing a duty required by law, or refraining from

violating the law." *Id.*

Relying on *Stegall v. Resource Technology Corp.*, 514 Mich. 327, 340-343 (2024), MPT contends that the statutory remedies available under ELCRA and § 1981 are adequate and exclusive and therefore foreclose a duplicative public policy claim. ECF No. 13, PageID.109. MPT further argues that Lewis's claim fails independently because she has not shown that she was terminated for exercising a legally protected right, performing a legal duty, refusing to violate the law, or reporting conduct that was itself unlawful. *Id.* at PageID.110. Lewis responds that her public-policy claim is not coextensive with her statutory discrimination and retaliation claims. ECF No. 14, PageID.290-291. Without proper authority, she argues that a public-policy claim may proceed where it rests on a source of public policy distinct from the ELCRA. *Id.* at PageID.291.[6] She then characterizes her termination as retaliation for "calling out Defendant's nepotism" and contends that such opposition falls within Michigan's public policy exception for reporting unlawful discrimination and workplace unfairness. *Id.* at PageID.291-292.

To the extent Lewis bases her wrongful termination claim on opposing or

[6] [6] The Court notes that the Michigan Court of Appeals has rejected this very argument in another case brought by Plaintiff's counsel shortly after the present case was filed. *Abu v. City of Ann Arbor*, No. 363487, 2024 WL 133331 (Mich. Ct. App. Jan. 11, 2024), *appeal denied,* 513 Mich. 1164, 7 N.W.3d 824 (2024). And while not technically binding precedent, the Court gives great weight to the Michigan Court of Appeals' interpretation of Michigan public policy. A review of that opinion reveals that the Michigan Court of Appeals clearly addressed this very argument. *Id.* at *7.

reporting *racially* discriminatory practices, the Court finds that MPT's reliance on the remedies available under § 1981 and ELCRA, standing alone, is sufficient to resolve Lewis's public-policy claim in their favor. *See Abu*, 2024 WL 133331 at 7 ("[W]here there exists a statute explicitly proscribing a particular adverse employment action, that statute is the exclusive remedy, and no other 'public policy' claim for wrongful discharge can be maintained.") (quoting *Kimmelman*, 278 Mich. App. at 573). However, Lewis's claim has additional legal defects: she fails to establish that any conduct she reported or opposed during her time at MTP was illegal or otherwise identify an objective legal source from which her claims derive.

To the extent Lewis maintains that she was terminated for complaining about nepotism or preferential treatment independent of race, she must identify an objective source of Michigan public policy protecting that conduct. She has not done so. Lewis identifies no Michigan statute, constitutional provision, regulation, or other objective legal source establishing a public policy against workplace nepotism, familial favoritism, or preferential treatment based on an employee's relationship with a Human Resources employee. *See Kimmelman*, 278 Mich. App. at 573-576 (requiring an objective legal source for the asserted public policy and rejecting a wrongful-discharge claim where the plaintiff failed to identify one applicable to his conduct).

Additionally, to the extent Lewis premises her public-policy claim on

reporting disparate treatment of black employees, the Court has already concluded that her complaint concerning Madelyn's personal cell-phone use did not communicate opposition to race discrimination. Once more, Lewis cannot avoid that deficiency merely by recharacterizing her conduct as reporting disparate treatment of black employees in her briefing. Nor can she meaningfully distinguish that alleged conduct from conduct protected under ELCRA. The Court therefore finds that Lewis's claim fails as a matter of law and MPT is entitled to summary judgment on her Wrongful Discharge claim (Count V).

**IV.**

Based on the foregoing, Lewis failed to establish a genuine dispute of material fact as to any of the claims brought forth in the Complaint.[7] Accordingly, the Court **GRANTS** MPT's Motion for Summary Judgment (ECF No. 13) as to each of the Plaintiff's claims, and the Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**.

***This is a Final Order that closes the case.***

**IT IS SO ORDERED.**

Dated: September 23, 2026
Detroit, Michigan

s/Brandy R. McMillion
HON. BRANDY R. MCMILLION

[7] Because the Court has disposed of all of Plaintiff's claims on their merits, the Court declines to consider Defendant's alternative argument that Lewis's claims are barred by judicial estoppel based on alleged misrepresentations in her bankruptcy proceedings. *See* ECF No. 13, PageID.110-113. Defendant may raise those issues with the Bankruptcy Court, if inclined.

United States District Judge